# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Dauphin School District,      :
                Appellant          :
                              :
              v.                  :    No. 1154 C.D. 2017
                              :    Argued: September 18, 2018
Valerie Hawkins, Fox 43 News and    :
the Commonwealth of Pennsylvania,    :
Office of Open Records               :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge (P)
                HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: December 10, 2018

       Central Dauphin School District (School District) appeals an order of the Court of Common Pleas of Dauphin County (trial court) directing it to provide a school bus surveillance video to a television news station. In doing so, the trial court affirmed the final determination of the Office of Open Records (OOR) that the video, which records a confrontation between a student and a parent (of another student), was required to be disclosed under the Right-to-Know Law.[1] The School District contends that the trial court erred because disclosure of the video could lead to the District's loss of federal funding and because the video relates to the District's noncriminal investigation. For these reasons, the School District asserts that the Right-to-Know Law exempts the school bus video from disclosure. Discerning no merit to the School District's arguments, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

**Background**

On February 23, 2016, Valerie Hawkins, on behalf of Fox43 News (Requester), submitted a written request to the School District that stated, in pertinent part, as follows:

> Fox43 News is requesting a copy of the video that was captured by a school bus camera system that occurred on Feb. 16, 2016. According to paperwork filed at Magisterial District Judge Lowell Witmer's office, Erica Rawls grabbed the wrist of a 17-year-old girl after the [Central Dauphin] East girls' basketball [team] returned from a District 3 playoff game at Central Dauphin on Feb. 16 (see attached document). Rawls was cited with a summary count of harassment. *We would like to obtain a video copy of the incident that was captured by the school bus video system.*

Reproduced Record at 5a (R.R. __) (emphasis added). The School District denied the request for the stated reason that disclosure of the video would violate the federal Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g, which could lead to the District's loss of federal funding. This potential loss exempted the video from disclosure under Section 708(b)(1)(i) of the Right-to-Know Law, 65 P.S. §67.708(b)(1)(i). Alternatively, the School District asserted that the video was a record "relating to" a noncriminal investigation and, thus, exempt under Section 708(b)(17) of the Right-to-Know Law, 65 P.S. §67.708(b)(17).

Requester appealed to the OOR, stating that it wanted the video in order to view "the actions of the adult, Erica Rawls, who was charged by police and is the wife of [Central Dauphin] East Principal Jesse Rawls." R.R. 7a. In response, the School District submitted a sworn affidavit of Assistant Superintendent Karen McConnell, its open records officer, stating that the video showed students in addition to Mrs. Rawls, and the School District lacked the technology to redact the

2

students' images.  McConnell Affidavit ¶¶7, 11; R.R. 26a.  The affidavit reiterated the legal bases for the School District's refusal to grant the request, *i.e.,* the risk of a loss of federal funding and the relationship of the video to a noncriminal investigation by the School District.

On May 19, 2016, the OOR issued a final determination granting Requester's appeal.  It held that the exemption in Section 708(b)(1)(i) of the Right-to-Know Law did not apply because the school bus video was not an "education record" within the meaning of FERPA.  It also held that the exemption in Section 708(b)(17) of the Right-to-Know Law did not apply because the video was, at most, incidental to a noncriminal investigation.

The School District appealed to the trial court, which conducted an evidentiary hearing.  The sole witness was McConnell, who, in addition to serving as the School District's open records officer, supervises its finances and administration.  Notes of Testimony, 3/30/2017, at 6-7 (N.T.__); R.R. 233a-34a.

According to McConnell, each school bus is equipped with two cameras.  One is mounted over the driver's head "that faces out to the [front] door[,]" and another is mounted in the front of the bus and "faces all the way to the back[.]" N.T. 7; R.R. 234a.  These cameras record individuals getting on and off the bus; their backs as they walk down the center aisle; and their faces while seated.  The cameras start recording when the bus engine is turned on and continue until 20 minutes after the engine is turned off.  The cameras are programmed to overwrite the recorded content every 10 to 14 days.

The video footage is reviewed only when "there is a problem[,]" such as a disciplinary or safety issue.  N.T. 7, 9; R.R. 234a, 236a.  In that case, the School District's director of transportation downloads the video and discards it "once it's

3

no longer needed [by the School District.]" N.T. 39; R.R. 266a. The School District's security personnel must request school bus videos from the director of transportation, who has sole responsibility for the videos.

McConnell testified that the requested video depicts a confrontation between a member of the girls' high school varsity basketball team and Rawls. The incident began in a parking lot outside the school bus and continued onto the bus. Several parents, who witnessed the incident, complained to the School District. In response, the School District downloaded the video to determine "if there should be student discipline or staff discipline [or] there were any unsafe acts that took place on the bus." N.T. 12; R.R. 239a. After investigation, the School District disciplined at least one student and one staff member, but McConnell did not identify either one. McConnell stated that this investigation was "very lengthy[,]" and included reviewing the video, interviewing students and staff, and speaking with parents. N.T. 10-11; R.R. 237a-38a.

McConnell testified that the school bus video at issue is not kept in any student's file; instead, she maintains the video in a fireproof safe in her office "as the open records officer." N.T. 13, 38-39; R.R. 240a, 265a-66a. By contrast, student files are maintained in hard copy and electronic format in varying locations.

On cross-examination, McConnell admitted that she is "very rarely" involved in student discipline. N.T. 40; R.R. 267a. Although she participated in the investigation of the incident recorded on the school bus video, she did not make any decisions about the discipline that followed. McConnell acknowledged that the United States Department of Education has never penalized the School District for a violation of FERPA.

4

Rawls was charged with criminal harassment, a summary offense, for her involvement in the incident. At the hearing before the magisterial district judge, the student involved in the incident testified, and a portion of the school bus video was played.[2] The hearing resulted in the dismissal of the harassment charge. The hearing was covered in the press, and these accounts identified the name of the student involved.

After hearing the evidence and oral argument, the trial court affirmed the OOR's final determination. It rejected both of the School District's theories that the video was exempt from disclosure under the Right-to-Know Law.

The trial court concluded, first, that the school bus video was not an "education record" for purposes of FERPA. The video was not "part of a student's permanent academic record[,]" but, rather, maintained by the School District's open

---

[2] Requester contends that because the video was played before a magisterial district judge, it is a public judicial record to which access must be permitted. Requester Brief at 34-35 (citing *Commonwealth v. Upshur*, 924 A.2d 642, 653 (Pa. 2007)). Requester argues that no prejudice can result from a broadcast of the video because it was shown in a court hearing, and the School District presented no evidence that the video was sealed.

The public enjoys a common law right of access to documents and materials used during court proceedings, although such access is not unlimited. *Upshur*, 924 A.2d at 647. As a threshold inquiry, courts determine whether the requested documents constitute public judicial documents, which "are used by the judge in rendering a decision[.]" *Guarrasi v. Scott*, 25 A.3d 394, 401 (Pa. Cmwlth. 2011) (quoting *Commonwealth v. Long,* 922 A.2d 892, 898 (Pa. 2007)). Disclosure is subject to the court's supervisory power and "[w]here the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied [by the court]." *Commonwealth v. Martinez,* 917 A.2d 856, 862 (Pa. Super. 2007) (quoting *Commonwealth v. Fenstermaker,* 530 A.2d 414, 420 (Pa. 1987)). This Court has held that a common law claim based on the public nature of judicial records is distinct from a statutory right of access under the Right-to-Know Law. *Faulk v. Philadelphia Clerk of Courts*, 116 A.3d 1183, 1188 (Pa. Cmwlth. 2015).

We need not address whether Requester has a common law right of access to the video recording because the trial court did not hold that the school bus video constitutes a public judicial document, and, if so, whether it shall be sealed under the circumstances.

5

records officer.  Trial Court Op. at 12; R.R. 458a.  The trial court explained that under FERPA, an education record must be "kept in a filing cabinet in a records room at the school or on a permanent secure database, perhaps even after the student is no longer enrolled."  Trial Court Op. at 11 (quoting *Owasso Independent School District No. I-011 v. Falvo*, 534 U.S. 426, 433 (2002)); R.R. 457a.  The trial court also found the school bus video to be beyond the reach of FERPA because the information on the video was already known to the community as a result of media reports.  Concluding that disclosure of the video would not jeopardize the School District's federal funding under FERPA, the trial court held that the School District did not prove that the video was exempt under Section 708(b)(1)(i) of the Right-to-Know Law.

The trial court also concluded that the school bus video was not exempt under Section 708(b)(17) of the Right-to-Know Law as a record relating to a noncriminal investigation.  In so holding, the trial court relied upon *Pennsylvania State Police v. Grove,* 161 A.3d 877 (Pa. 2017) (*Grove II*), where our Supreme Court held that police dash-cam videos do not always contain investigative materials and are not automatically exempt from disclosure.  Further drawing on *Grove II,* the trial court explained that the school bus video, by itself, did not "reveal any progress in or result of an investigation conducted by the District."  Trial Court Op. at 14; R.R. 460a.  Rather, the video "merely shows an altercation that began outside of the bus, moved onto the bus, and other individuals getting on and off of the bus," all in plain view of bystanders.  *Id*. at 16; R.R. 462a.  The trial court discredited McConnell's testimony that the video was investigative because there was no evidence on "how or why an employee in the finance and operations side of the District would be involved in an investigation regarding staff and student conduct."  *Id*. at 15; R.R.

6

461a. Further, McConnell acknowledged that she was rarely involved in student discipline. The trial court held that the School District did not prove that the school bus video was exempt as a record relating to a noncriminal investigation.

The School District has appealed the trial court's order to this Court and presents two issues for our consideration.[3] First, the School District argues that the trial court erred in holding that disclosure of the school bus video would not result in a loss of federal funding. Second, the School District argues that the trial court erred in holding that the video did not relate to a noncriminal investigation.

**Right-to-Know Law**

The Right-to-Know Law requires state and local government agencies to provide access to public records upon request. Section 102 of the Right-to-Know Law defines a "public record" as a

> record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708[, 65 P.S. §67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege.

65 P.S. §67.102. A "record" is further defined under the Right-to-Know Law as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained

---

[3] The School District raises three issues, which we consolidate into two to facilitate our review. This Court's review in a Right-to-Know Law appeal determines "whether the trial court committed an error of law and whether its findings of fact are supported by substantial evidence." *Paint Township v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015). The statutory construction of the Right-to-Know Law is a question of law subject to this Court's plenary, *de novo* review. *Hearst Television, Inc. v. Norris*, 54 A.3d 23, 29 (Pa. 2012).

electronically and a data-processed or image-processed document.

*Id.*

The Right-to-Know Law provides exceptions to the general rule that every public record must be provided upon request. However, "the exceptions to disclosure of public records must be narrowly construed." *Office of the Governor v. Davis,* 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015). The burden of proving that a "record" is exempt from public access is placed on the "local agency receiving a request by a preponderance of the evidence." Section 708(a)(1) of the Right-to-Know Law, 65 P.S. §67.708(a)(1). This standard of proof requires that "the existence of a contested fact must be more probable than its nonexistence." *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011) (quoting *Department of Transportation v. Agricultural Lands Condemnation Approval Board*, 5 A.3d 821, 827 (Pa. Cmwlth. 2010)).

With these principles in mind, we turn to School District's contention that the requested video is exempt from disclosure.

## I. Loss of Federal Funding Exemption

Section 708(b)(1)(i) of the Right-to-Know Law exempts from disclosure "[a] record, the disclosure of *which would result in the loss* of Federal or State funds by an agency or the Commonwealth[.]" 65 P.S. §67.708(b)(1)(i) (emphasis added). The School District argues that the school bus video is an "education record" under FERPA, and its disclosure might cause it to lose federal funding. This risk is not diminished by "the mere fact that people may know about or gossip about matters occurring at school [and] does not lessen FERPA's protection of confidentiality for school records." School District Brief at 21.

8

FERPA does two things. First, it ensures that parents can access their child's academic and disciplinary records so that they can correct inaccurate information therein. 20 U.S.C. §1232g. To that end, the receipt of federal funds is conditioned upon schools giving parents access to their children's education records. Second, FERPA protects the privacy of these records and sanctions school districts that have "a policy or practice of permitting the release of education records" without parental consent. 20 U.S.C. §1232g(b)(1). The sanction can include a loss of federal funds.

With respect to privacy concerns, Section 1232g(b)(1) of FERPA states, in relevant part, as follows:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting *the release of education records* (or *personally identifiable information contained therein* other than directory information, as defined in paragraph (5) of subsection (a)) *of students without the written consent of their parents….*

20 U.S.C. §1232g(b)(1) (emphasis added). Section 1232g(a)(4)(A) defines "education records" as "those records, files, documents, and other materials which – (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A).

At issue here is not the family's right under FERPA to access an education record held by a school but, rather, the privacy of that record. Simply, the

9

central question is whether the requested school bus video constitutes an "education record" for purposes of FERPA.[4]

The School District argues that because the video contains personally identifiable information about the student involved in the altercation and is maintained by the School District, it satisfies FERPA's definition of an education record. *See* 20 U.S.C. §1232g(a)(4)(A). Requester responds that a surveillance video is not an education record merely because it captures images of students; this logic would make videos of football games education records. Rather, an education record must "directly relate" to a student and be maintained in accordance with FERPA protocols. Requester points to the trial court's statement that the image of the student or students in the video should be redacted electronically.

In *Easton Area School District v. Miller*, 191 A.3d 75 (Pa. Cmwlth. 2018), this Court held that a school bus video that recorded a school teacher roughly disciplining a student was not an education record under FERPA. We explained that an "education record" has a reach beyond a student's academic transcript. However, the school bus video at issue was not an "education record" because it did not directly relate to a student. Rather, it directly related to a teacher's performance.

In so ruling, we found persuasive two United States District Court decisions, *Young v. Pleasant Valley School District* (M.D. Pa., No. 3:07-CV-854,

---

[4] In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984), the United States Supreme Court explained that in construing a federal statute courts "must give effect to the unambiguously expressed intent of Congress." If the statute is silent or ambiguous, courts defer to the agency's interpretation as long as it is "based on a permissible construction of the statute." *Id.* Similarly, Pennsylvania rules of statutory construction provide that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b).

filed June 26, 2008), 2008 WL 11336157 (unreported), and *Ellis v. Cleveland Municipal School District*, 309 F.Supp.2d 1019 (N.D. Ohio 2004). Both courts held that the requested documents, consisting of emails and incident reports, did not constitute education records because they "directly related" to the discipline of a teacher and were only "tangentially related" to a student. *Easton Area School District*, 191 A.3d at 82 (citing *Young*, slip op. at *7; *Ellis*, 309 F.Supp.2d at 1022). We also considered guidance from the United States Department of Education that states:

> In the context of photos and videos, determining if a visual representation of a student is *directly* related to a student (rather than just incidentally related to him or her) is often context-specific, and educational agencies and institutions should examine certain types of photos and videos on a case by case basis to determine if they directly relate to any of the students depicted therein.

*Easton Area School District,* 191 A.3d at 82 (citing *FAQs on Photos and Videos under FERPA*, U.S. DEPARTMENT OF EDUCATION, https://studentprivacy.ed.gov/faq/faqs-photos-and-videos-under-ferpa (last visited November 8, 2018)) (emphasis in original).

Here, the school bus video records a confrontation between a student and Rawls, a parent, who was criminally charged for her involvement. Requester contends that a record that "merely mention[s] a student" does not directly relate to that student. Requester Brief at 14. The subject video captures, "in large part," the conduct of Rawls. *Id.* at 16.

11

The school bus video reveals nothing about a student-specific file, whether academic or disciplinary in nature.[5]  It is not known whether the School District used the video in the discipline of the unnamed student.  This is a close case.  Ultimately, it was the School District's burden to establish that the video directly related to a student.  We agree with the trial court that the School District did not satisfy this first part of the "education record" definition.[6]

---

[5] The United States Department of Education has identified factors to consider if a photo or video is "directly related" to a student:

- The educational agency or institution uses the photo or video for disciplinary action (or other official purposes) involving the student (including the victim of any such disciplinary incident);
- The photo or video contains a depiction of an activity:
  - that resulted in an educational agency or institution's use of the photo or video for disciplinary action (or other official purposes) involving a student (or, if disciplinary action is pending or has not yet been taken, that would reasonably result in use of the photo or video for disciplinary action involving a student);
  - that shows a student in violation of local, state, or federal law;
  - that shows a student getting injured, attacked, victimized, ill, or having a health emergency;
- The person or entity taking the photo or video intends to make a specific student the focus of the photo or video (*e.g.*, ID photos, or a recording of a student presentation); or
- The audio or visual content of the photo or video otherwise contains personally identifiable information contained in a student's education record.

  A photo or video should not be considered directly related to a student in the absence of these factors and if the student's image is incidental or captured only as part of the background, or if a student is shown participating in school activities that are open to the public and without a specific focus on any individual.

*FAQs on Photos and Videos under FERPA*, U.S. DEPARTMENT OF EDUCATION, https://studentprivacy.ed.gov/faq/faqs-photos-and-videos-under-ferpa (last visited November 8, 2018).

[6] The trial court also held that the school bus video was not an education record because the information thereon was "known by members of the school community through conversation and

12

In any case, it is not enough that a document "directly relate" to a student. It must also be a record that is "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A). The School District contends that the trial court erred on this point because McConnell kept the video recording in her office under lock and key. Requester responds that McConnell's testimony established that the School District

_____

personal contact." Trial Court Op. at 10; R.R. 456a. The trial court relied upon *Daniel S. v. Board of Education of York Community High School*, 152 F.Supp.2d 949 (N.D. Ill. 2001). Trial Court Op. at 8; R.R. 454a. In that case, a gym teacher disciplined two students, including Daniel S., and then shared that information with other students. The plaintiff argued, *inter alia*, that the teacher's actions violated FERPA, but the U.S. District Court disagreed for the stated reason that members of the school community already knew about the incident. The gym teacher's comment derived from his personal knowledge, not from tangible "education records." *See* 34 C.F.R. §99.3 (defining "record" as information recorded in any media). *Daniel S.* stands for the proposition that teachers may discuss information within their personal knowledge. It sheds little light on the dispositive question here, which is whether a tangible video recording is an education record.

In its Rule 1925(a) opinion, the trial court also cited guidance from the United States Department of Education, Family Policy Compliance Office, which states in pertinent part:

> FERPA applies to the disclosure of tangible records – and of information derived from tangible records. FERPA does not protect the confidentiality of information in general, and therefore, does not apply to the disclosure of information derived from a source other than education records, even if education records exist which contain that information. As a general rule, information that is obtained through personal knowledge or observation, and not from an education record, is not protected from disclosure under FERPA.

*Letter to Montgomery County Public Schools (MD) re: Law Enforcement Unit (January 15, 2006)* at 2, U.S. DEPARTMENT OF EDUCATION, https://studentprivacy.ed.gov/resources/letter-montgomery-county-public-schools-md-re-law-enforcement-unit-records (last visited November 8, 2018). This guidance addresses when student witness statements and reports made by school security staff can become "law enforcement records," which FERPA exempts from the definition of "education records." 20 U.S.C. §1232g(a)(4)(B)(ii). This is not the precise issue before this Court.

Because we decide that the school bus video does not directly relate to a student and, thus, is not an education record, we need not address these additional grounds cited by the trial court in support of its conclusion.

does not "maintain" any of its surveillance videos in a systematic fashion, which is the hallmark of a true "education record."

In ruling that the school bus video does not satisfy the second part of the "education record" definition, the trial court relied upon *Owasso*, 534 U.S. 426. In that case, parents initiated litigation to end the school district's practice of having students grade each other's papers and then report the grades aloud to the teacher. The parents contended this practice violated FERPA's requirement that schools keep student records confidential. The issue before the United States Supreme Court was whether student papers in the hands of other students for a short period of time were education records under FERPA.

The Supreme Court held that the school's peer review instructional program did not satisfy the maintenance requirement for an "education record." In so holding, the Supreme Court explained as follows:

> The word 'maintain' suggests that [*education*] *records will be kept in a filing cabinet in a records room at the school or on a permanent secure database, perhaps even after the student is no longer enrolled*. The student graders only handle assignments for a few moments as the teacher calls out the answers. It is fanciful to say they maintain the papers in the same way the registrar maintains a student's folder in a permanent file.

*Id.* at 433 (emphasis added). The Supreme Court reasoned that "[o]ther sections of the statute support our interpretation." *Id.* at 434. Those other statutory provisions require schools "to maintain a record, kept with the education records of each student. 20 U.S.C. §1232g(b)(4)(A)." *Owasso*, 534 U.S. at 434. FERPA's maintenance protocol requires the school to keep a log of all persons who have requested access to a student's education record and their reasons for doing so.

The School District argues that the United States Supreme Court made these observations in a totally different context and "to require such specific maintenance protocols goes well beyond the plain language of the statute and is simply not practical[.]" School District Brief at 42. Requester and the *amici curiae*[7] respond that the trial court correctly applied *Owasso*, noting that the school bus video is temporary at best and it is not a type of record that can be corrected, which is another hallmark of an education record. They contend that the School District's broad construction of "education records" would exempt "all records in all formats" from disclosure, including "thousands of inboxes, file drawers and security cameras everywhere on campus[.]" Brechner Center *Amicus* Brief at 10, 12.

While *Owasso* concerned student papers, and not surveillance videos, the Supreme Court's interpretation of what constitutes "maintenance" of an education record is binding in every context. The Supreme Court explained that because the school did not have a maintenance protocol for peer-reviewed student papers, this supported its conclusion that these papers were not education records. *Owasso,* 534 U.S. at 435. Likewise, here, the School District does not have a maintenance protocol for school bus videos. That absence supports the conclusion that they are not education records for purposes of FERPA. As with the student papers in *Owasso,* the school bus video, even when downloaded, is not maintained permanently. Rather, it is discarded "once it's no longer needed[.]" N.T. 39; R.R. 266a. Nor is a surveillance video a document capable of "correction," which is one of the purposes of giving families access to their child's education record. 20 U.S.C.

---

[7] The Brechner Center for Freedom of Information, the Student Press Law Center, the National Freedom of Information Coalition, and the Society of Professional Journalists (collectively Brechner Center), as well as the Pennsylvania NewsMedia Association, filed *amicus* briefs in support of Requester in this appeal.

15

§1232g. We agree with the trial court that the school bus video is not maintained in the manner contemplated by FERPA, as definitively construed in *Owasso*.

Section 708(b)(1)(i) of the Right-to-Know Law exempts from disclosure "[a] record, the disclosure of which *would result in* the loss of Federal or State funds by an agency or the Commonwealth[.]" 65 P.S. §67.708(b)(1)(i) (emphasis added). At most, the School District "*may be financially penalized* through loss of [f]ederal funds" if it releases the school bus video. McConnell Affidavit ¶16; R.R. 26a (emphasis added).[8] Section 708(a)(1) requires more than the mere possibility of a loss of federal funds. Even so, the loss of federal funding is reserved for schools that have a "practice" or "policy" of releasing education records. 20 U.S.C. §1232g(b)(1).

To establish that a document is an "education record" under FERPA, the document must "directly relate[] to a student" *and* be "maintained" by the school. 20 U.S.C. §1232g(a)(4)(A). The School District did not satisfy either requirement. It did not prove that the school bus video directly relates to a student or that it is maintained in the manner contemplated by FERPA. We affirm the trial court's ruling that the school bus video is not an education record for purposes of FERPA and, thus, not exempt from disclosure under Section 708(b)(1)(i) of the Right-to-Know Law.

## II. Noncriminal Investigation Exemption

The School District argues that the trial court erred in refusing to exempt the school bus video as a noncriminal investigative record under Section

---

[8] A loss of funding can be imposed only if the Department of Education finds that the school has refused to comply with FERPA after a notice of violation and plan of correction has been issued. 34 C.F.R. §§99.63-99.67 (setting forth the administrative procedures that must precede a withdrawal of federal funds).

708(b)(17) of the Right-to-Know Law. The School District asserts that it conducted an extensive investigation into "the conduct at issue" and but for the investigation, the school bus video would not exist "in permanent form." School District Brief at 52, 55. Requester responds that the trial court discredited the School District's evidence on this point but, in any case, the School District's own evidence established that the school bus video was not created solely for investigations but, rather, for several purposes having nothing to do with investigations.

Section 708(b) of the Right-To-Know Law lists certain records of an agency that "are exempt from access by a requester." 65 P.S. §67.708(b). One such listed category concerns noncriminal investigative materials:

> (17) A record of an agency *relating to* a noncriminal investigation, including:
>
> > (i) Complaints submitted to an agency.
> >
> > (ii) Investigative materials, notes, correspondence and reports.
> >
> > (iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.
> >
> > (iv) A record that includes information made confidential by law.
> >
> > (v) Work papers underlying an audit.
> >
> > (vi) A record that, if disclosed, would do any of the following:
> >
> > > (A) Reveal the institution, progress or result of an agency investigation,

except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by the court.

(B) Deprive a person of the right to an impartial adjudication.

(C) Constitute an unwarranted invasion of privacy.

(D) Hinder an agency's ability to secure an administrative or civil sanction.

(E) Endanger the life or physical safety of an individual.

65 P.S. §67.708(b)(17) (emphasis added). This Court has held that a "noncriminal investigation" is one not undertaken for a criminal prosecution and denotes "a systematic or searching inquiry, a detailed examination, or an official probe." *Department of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). The inquiry, examination, or probe must be conducted as "part of the agency's official duties[.]" *Id*. at 814.

The trial court discredited McConnell's testimony that the school bus video related to a noncriminal investigation, noting that her responsibility was the School District's "finance and operations" and not student and staff discipline. She admitted that she had not been involved in any student discipline during the past year and was not the one who determined what discipline to mete out after the incident

18

on the school bus. On the other hand, the trial court did credit McConnell's testimony that she oversees the School District's fleet of school buses; that the School District's director of transportation downloaded the video for review after receiving complaints about the incident; and that the School District disciplined at least one student and one staff member following its investigation.

Based on these credibility determinations, the trial court held that the School District did not prove that the school bus video related to a noncriminal investigative record. In so holding, the trial court relied principally on *Grove II*, 161 A.3d 877, where our Supreme Court observed, *inter alia*, that the mere use of a surveillance video in an investigation does not mean the video itself is exempt from disclosure.

The decision in *Grove II* concerned Section 708(b)(16) of the Right-to-Know Law, which exempts access to a "record of an agency *relating to* or resulting in a criminal investigation…." 65 P.S. §67.708(b)(16) (emphasis added). Nevertheless, *Grove II* is relevant here because the exemption in the Right-to-Know Law for investigative records, whether criminal or noncriminal, depends on the qualifying phrase "relating to." Also relevant to our analysis are decisions of this Court that have followed *Grove II*.

In *Grove II*, the State Police denied access to two dash-cam videos, referred to as mobile video recordings (MVRs), for the stated reason that they were criminal investigative records that involved traffic citations, *i.e.,* summary criminal offenses. The OOR rejected this argument of the State Police and directed full disclosure. This Court modified the final determination of the OOR. We agreed that "[t]he mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under Section 708(b)(16) of the [Right-to-Know Law]

19

or [the Criminal History Record Information Act, 18 Pa. C.S. §§9101-9183]." *Pennsylvania State Police v. Grove*, 119 A.3d 1102, 1108 (Pa. Cmwlth. 2015) (*Grove I*). An MVR may have no "investigative content," or it may contain information relating to a criminal investigation, such as "witness interviews, interrogations, intoxication testing and other investigative work...." *Id.* at 1109. We concluded that where a single MVR includes both investigatory and non-investigatory information, "the agency must produce the record with the exempt information redacted." *Id*.

Notably, one of the requested MVRs lacked an audio component. Because it showed only a trooper speaking to the drivers of the vehicles and photographing the crash scene, we concluded that it contained no investigative information. By contrast, the other MVR had an audio component and recorded the police interviews of the drivers at the scene. We concluded that these recorded witness interviews did constitute investigative materials.

On further appeal, in *Grove II,* our Supreme Court affirmed our holding with respect to the Section 708(b)(16) exemption claimed by the State Police.[9] It expressly rejected the State Police's contention that MVRs are generally exempt, and held, instead, that the question must be determined on a case-by-case basis. *Grove II,* 161 A.3d at 894. The burden was on the State Police to prove the exemption, and it failed to meet its burden.

The Supreme Court held that determining whether a record is investigative requires an examination of "whether the video [portions of the MVR]

___

[9] However, the Supreme Court reversed this Court's determination that the MVRs that contained an audio component implicated the Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. §§5701-5782.

20

generally depict a systematic inquiry of examination into a potential crime." *Id.* at 893. The video-only MVR did not because it showed "nothing more than what a bystander would observe." *Id.* at 894. The citations for Vehicle Code[10] violations "could not have been garnered from the video-only aspect of the MVRs." *Id.* at 895. Thus, the State Police did not explain how the video portion of the MVRs "captured any criminal investigation." *Id.*

There were two concurring and dissenting opinions. Both Chief Justice Saylor and Justice Mundy rejected the majority's holding as at odds with the phrase "relating to" in Section 708(b)(16). Both opined that the phrase was chosen by the legislature to have a broad effect and, thus, they would have excluded the MVRs from public access. Notably, this same qualifying phrase "relating to" is used in the exemptions for both criminal and noncriminal investigations. 65 P.S. §§67.708(b)(16), 67.708(b)(17).

*Port Authority of Allegheny County v. Towne,* 174 A.3d 1167 (Pa. Cmwlth. 2017), considered access to a Port Authority bus video that recorded a vehicle accident. The Port Authority asserted that the bus video was exempt as relating to a noncriminal investigation because it was created for the sole purpose of conducting investigations. Access to these videos was limited to Port Authority Police and Port Authority claim personnel. The OOR disagreed and issued a final determination that the video was not an investigative record because it was created before any investigation. In reversing the OOR, this Court observed that "records created before investigations and accessed only when necessary can constitute investigative records, especially when the agency asserts that their only purpose is

---

[10] 75 Pa. C.S. §§101-9805.

21

for use in investigations." *Id.* at 1171. In holding that the bus video was a noncriminal investigative record, we reasoned as follows:

> In *Grove [II]*, the [Supreme] Court concluded that the [Pennsylvania State Police] failed to explain how the video portion of the MVRs captured any criminal investigation. In contrast, the Authority in the present case submitted affidavits as to how it investigated Requester's claim and the circumstances under which it downloaded and reviewed its recordings when undertaking a noncriminal investigation of a claim.

*Id*. at 1173.

Similarly, in *California Borough v. Rothey*, 185 A.3d 456 (Pa. Cmwlth. 2018), a requester sought a video from a police department's holding cell, which recorded a police officer assaulting a detainee. Upon learning of the incident, the police chief viewed the video, downloaded it, and took it to the district attorney for review. The police chief subsequently fired the officer for this conduct and filed criminal charges against him. The borough denied the request for the video recording of the holding cell, asserting, *inter alia*, that it was exempt as a criminal and noncriminal investigative record. The OOR granted the requester access to the video, and the trial court affirmed.

We reversed, holding that the video was exempt from disclosure both as a criminal and noncriminal investigative record. Unlike the MVRs in *Grove II*, the surveillance camera in *California Borough* recorded a criminal assault of a detainee by the police officer. The police chief studied the video and relied upon it to fire the officer and file criminal charges. *California Borough*, 185 A.3d at 466. Relying on *Towne,* we rejected the trial court's rationale that simply because the recording was created before an investigation was begun, it did not "relate to" a noncriminal investigation.

Here, the school bus video depicts a confrontation between a student and an adult. After receiving complaints, the School District downloaded the video, and this was followed by a "lengthy" investigation that included numerous witness interviews. Ultimately, the School District disciplined at least one student and one staff member. The School District argues that the video is exempt from disclosure as a noncriminal investigative record because it was downloaded for purposes of an investigation, as in *Towne*. Thus, the School District contends that the school bus video constitutes "investigative materials" under Section 708(b)(17)(ii) of the Right-to-Know Law.[11] We disagree.

In *Grove II,* the only exempt portion of the MVR was the audio portion that actually captured the "criminal investigation." *Grove II,* 161 A.3d at 895. The School District offered no evidence that the school bus video captured the noncriminal investigation. It did not explain how the video even related to the discipline it imposed. Whether the discipline was based on the School District's "lengthy" witness interviews or the video remains unknown. Nor did the School District establish how the video related to its investigation of a staff member; the adult in the video, Rawls, is not employed by the School District.

As our Supreme Court has directed, each claim that a record is exempt as relating to an investigation must be decided on its unique facts. *Grove II,* 161 A.3d at 894. *California Borough* and *Towne* are distinguishable. In *California Borough*, the video captured the commission of a crime by a police officer. In *Towne*, the Port Authority established that the bus video was used in its investigation and that the video was created solely for the purpose of doing investigations. By

---

[11] Before the trial court, the School District did not identify the subparagraph of subsection 17 on which it relied.

23

contrast, here, the school bus video serves many purposes, such as discouraging student misbehavior. As in *Grove II,* it is not likely that the School District could have based its discipline on the "video-only" images, and the video depicts images that were seen by many bystanders. *Grove II,* 161 A.3d at 895. The mere fact that a record has some connection to an investigation does not automatically exempt it under Section 708(b)(17) of the Right-to-Know Law. *Grove II*, 161 A.3d 894. The School District urges a broad interpretation of "relating to" as used in Section 708(b)(17), but we are bound by our Supreme Court's narrow reading of that phrase. *See Grove II,* 161 A.3d at 894-95.

## Conclusion

It is well established that "the exceptions to disclosure of public records must be narrowly construed." *Davis*, 122 A.3d at 1191. The School District did not meet its burden of proving that the school bus video is an education record under FERPA or that it is a record "relating to a noncriminal investigation." 65 P.S. §67.708(b)(17).

For these reasons, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Dauphin School District,     :
                    Appellant        :
                                     :
                                     :
          v.                         :     No. 1154 C.D. 2017
                                     :
Valerie Hawkins, Fox 43 News and     :
the Commonwealth of Pennsylvania,    :
Office of Open Records               :

# **O R D E R**

AND NOW, this 10th day of December, 2018, the order of the Court of Common Pleas of Dauphin County dated August 1, 2017, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge