IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Dauphin School District, :
       Appellant :
           : No. 1154 C.D. 2017
     v. :
           : Argued: March 15, 2021
Valerie Hawkins, Fox 43 News and :
the Commonwealth of Pennsylvania, :
Office of Open Records :

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ELLEN CEISLER, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH        FILED: April 22, 2021

   This Right-to-Know Law[1] (RTKL) appeal is before the Court on remand from the Pennsylvania Supreme Court for further consideration consistent with its opinion in *Easton Area School District v. Miller*, 232 A.3d 716 (Pa. 2020) (partial plurality) (*Easton II*).[2]

   In our original opinion, we affirmed the Court of Common Pleas of Dauphin County (trial court), which held that a school bus video of an incident involving a Central Dauphin School District (School District) girls' basketball player and a parent was not protected from disclosure under section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i). *Central Dauphin School District v. Valerie Hawkins, Fox 43*

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] The *Easton II* decision was decided by the majority, in part, and a plurality, in part. Any citations to *Easton II* are cites to majority holdings unless otherwise specified.

*News and the Commonwealth of Pennsylvania, Office of Open Records*, 199 A.3d 1005 (Pa. Cmwlth. 2018), *vacated,* 238 A.3d 337 (Pa. 2020). Section 708(b)(1)(i) of the RTKL exempts from public access a record the disclosure of which "would result in the loss of Federal or State funds by an agency or the Commonwealth." 65 P.S. §67.708(b)(1)(i). The School District argued that if it disclosed the video, it would lose Federal funding under the Federal Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g(b)(1) and (2), which generally provides for the withholding of Federal funding to educational agencies or institutions that have a "policy or practice" of releasing "education records"[3] and personally identifiable information contained in those records unless certain conditions are present.[4] Our

---

[3] "Education record" is defined in FERPA as "those records, files, documents, and other materials which – (i) contain information ***directly related*** to a student; and (ii) are ***maintained*** by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A) (emphasis added).

[4] Section 1232g(b)(1) of FERPA provides:

> No funds shall be made available under any applicable program to any educational agency or institution ***which has a policy or practice of permitting the release of education records*** (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents to any individual, agency, or organization, other than [those listed in subsections (A)-(L), which are not at issue in the case *sub judice*].

20 U.S.C. §1232g(b)(1) (emphasis added). Section 1232g(b)(2) of FERPA additionally provides for exceptions where the student's parent consents to disclosure or a court orders the disclosure:

> No funds shall be made available . . . to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records . . . unless--
>
> (A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to

**(Footnote continued on next page…)**

original decision was based in large part on our conclusion that the bus video in question was ***not*** an "education record" for purposes of FERPA's privacy protections. We concluded that, because the bus video was not an "education record," the School District would not lose funds under FERPA if it was released, and therefore, it was not exempt from public disclosure under the loss of funds exception under section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i).

On remand, we reach the same result as we reached in our original opinion and affirm the trial court, although our reasons for doing so have been modified to conform to the rationale of *Easton II*.

**Facts and Procedural History**

On February 23, 2016, Valerie Hawkins, on behalf of Fox 43 News (Fox), submitted a written RTKL request to the School District that stated, in pertinent part, as follows:

> [Fox] is requesting a copy of the video that was captured by a school bus camera system that occurred on Feb. 16, 2016. According to paperwork filed at Magisterial District Judge Lowell Witmer's office, Erica Rawls grabbed the wrist of a 17-year-old girl after the [Central Dauphin] East girls' basketball [team] returned from a District 3 playoff game at Central Dauphin on Feb. 16 (see attached document). Rawls was cited with a summary count of harassment. We would

---

whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

    (B) . . . such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency . . . .

20 U.S.C. §1232g(b)(2)(A)-(B).

3

> like to obtain a video copy of the incident that was captured by the school bus video system.

(Reproduced Record (R.R.) at 5a.)

The School District denied the request for the stated reason that disclosure of the video would violate FERPA, and the potential loss of Federal funds under FERPA exempted the video from disclosure under the RTKL's loss of funds exemption in section 708(b)(1)(i) of the RTKL,[5] 65 P.S. §67.708(b)(1)(i).[6]

Fox appealed to the Office of Open Records (OOR). Before the OOR, the School District submitted a sworn affidavit of Assistant Superintendent Karen McConnell, its open records officer. The OOR determined that the school bus video was not exempt and ordered its release. The School District appealed to the trial court, which held an evidentiary hearing. Assistant Superintendent McConnell testified that students are individually identifiable in the video by both facial recognition and by the jersey numbers that are embroidered on their backpacks. (R.R. at 238a-39a.) She further testified that the video was created (converted to a permanent form) for the purpose of investigating student and staff conduct for safety and disciplinary purposes. (R.R. at 236a-37a.) When asked whether the School District had the ability to redact the video, Assistant Superintendent McConnell stated that the School District does not have the capability of doing that. She testified in this regard, as follows:

---

[5] Alternatively, the School District asserted that the video was a record "relating to" a noncriminal investigation and, thus, exempt under section 708(b)(17) of the RTKL, 65 P.S. §67.708(b)(17). That issue is not before us.

[6] The exemption set forth in section 708(b)(1)(i) of the RTKL provides: "Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act: (1) A record, the disclosure of which: (i) would result in the loss of Federal or State funds by an agency or the Commonwealth[.]" 65 P.S. §67.708(b)(1)(i).

4

Q. Do you know whether or not the [School District] has the ability to redact or pixelate or do anything to obscure the images of students on any individual video recording?

A. We do not have the capability of doing that.

(R.R. at 241a.)

The trial court affirmed the OOR, finding that the video was not an "education record" under FERPA because it was not "part of a student's permanent academic record." (Trial court op., 8/1/2017, at 12.) Concluding that disclosure of the video would not jeopardize the School District's Federal funding under FERPA, the trial court held that the School District did not prove that the video was exempt under the loss of funds exemption in section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i). Therefore, the trial court found that the video was a public record pursuant to the RTKL. *Id.* at 12, 16. The School District appealed to this Court.

### A. Our Prior Opinion in the Case *Sub Judice*

On December 10, 2018, this Court issued its opinion and order, affirming the trial court. We agreed that the video at issue was not exempt from disclosure under the loss of funds exemption contained in section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i). Relying on our decision in *Easton Area School District v. Miller*, 191 A.3d 75 (Pa. Cmwlth. 2018) (*Easton I*), *aff'd Easton II*, we concluded that the video at issue was not an "education record" because the School District failed to establish the first part of the "education record" definition in FERPA that the video be "directly related" to a student.[7] We noted that the video revealed nothing about a

---

[7] In *Easton I*, we held that a school bus video showing a teacher physically disciplining a student was not an "education record" because it did not "directly relate" to a student but rather directly related to a teacher's performance. However, at the time we rendered our decision in this

**(Footnote continued on next page…)**

student-specific file, either academic or disciplinary in nature, and it was unknown whether the School District used the video in the discipline of the unnamed student. *Central Dauphin School District*, 199 A.3d at 1013-14. Further, we found that the School District failed to establish the second part of the definition that the video was "maintained by the institution."

Because the School District did not prove that the video "directly relates" to a student or that it is "maintained" in the manner contemplated by FERPA, we affirmed the trial court, ruling that the school bus video is not an "education record" for purposes of FERPA and, thus, not exempt from disclosure under section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i).

### B. Remand

On January 9, 2019, the School District petitioned the Pennsylvania Supreme Court for allowance of appeal, arguing that we erred in our determination that the video is not an "education record" under FERPA, 20 U.S.C. §1232g. Meanwhile, on June 18, 2020, a plurality of the Supreme Court[8] affirmed our decision in *Easton I*,

_____

case, relying in part on our decision in *Easton I*, our decision in *Easton I* had not yet been reviewed by the Supreme Court. As discussed *infra*, the Supreme Court rejected our reasoning as to why we believed the video did not "directly relate" to the student. Whether the bus video is "directly related" to the student is one of the issues we revisit on remand.

[8] As noted, the decision of the Supreme Court in *Easton II* was not unanimous. Justice Dougherty authored the opinion. A majority of the Justices agreed that although the video was an education record under FERPA, it should be released. (Part III(A)(2) of the Opinion). However, the *Easton II* decision did not carry a majority with respect to its requirement that the school district redact the video (Part III(B)). Justices Dougherty, Todd and Donohue joined Part III(B) of the Opinion that required the education record to be disclosed, in redacted form. Chief Justice Saylor and Justices Baer, Wecht, and Mundy believed that it should be released in unredacted form because the redaction question was not before the Supreme Court and declined to join that part of the decision.

but its analysis significantly departed from our analysis. By Order dated September 1, 2020, the Supreme Court vacated our December 18, 2018 opinion and order in the case *sub judice* and remanded for consideration of its opinion in *Easton II*.

On December 14, 2020, we directed the parties to file supplemental briefing to address the following issue:

> Whether the video recording is an education record under [FERPA], and, if so, whether the video recording is protected from disclosure under the [RTKL] or may be disclosed in redacted form.

## Analysis

### A. *Easton II*

Because we have been directed to reconsider our decision in light of the Supreme Court's opinion in *Easton II*, we begin with an analysis of that case.[9]

In *Easton II*, it was alleged that an Easton Area School District (district) elementary school teacher physically disciplined a child on a school bus. Rudy Miller and *The Express Times* (collectively, Miller) submitted a RTKL request to the district, seeking a copy of the surveillance video from the school bus security camera capturing the incident. *Easton II*, 232 A.3d at 719. The district withheld the video under the loss of funds exemption in section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i). Relying on the definitions of "education record" and "personally identifiable information" as used in FERPA, the district argued that the video was exempt from disclosure as an "education record." *Id.* Miller appealed to the OOR.

The OOR determined that only those records relating to student academics are "education records" under FERPA and, because the video was not part of the

---

[9] In support of the School District's arguments, the Pennsylvania State Education Association has filed an *amicus curiae* brief.

7

student's permanent academic file, the video was not an "education record" under FERPA. The OOR issued a final determination granting Miller's appeal and ordered the district to disclose the video within 30 days. *Id.* at 720.

The district appealed to the Court of Common Pleas of Northampton County (common pleas court), which agreed with the OOR's determination that the video was not an "education record" under FERPA because the district failed to establish that the video contained information depicting a student's academic or educational performance. *Id.* Thereafter, the district appealed to this Court.

In a unanimous published decision, a three-judge panel of this Court affirmed the common pleas court's order. Contrary to the rationale of the lower tribunals, we reasoned that FERPA did not require an "education record" to be related exclusively to a student's academic performance. *Id.* at 721. We emphasized that FERPA required the information to be "directly related to a student" and because the video was only "tangentially related" to students on the bus and instead "directly related" to the teacher disciplining the student, the video was not an "education record." *Id.* Based on that determination, we held, because the video did not constitute an "education record" under FERPA, its disclosure would not subject the district to a loss of federal funding. We thus concluded that the common pleas court did not err in holding that the district failed to prove that the video was exempt from disclosure under the loss of funds exemption of the RTKL, 65 P.S. §67.708(b)(1)(i). *Easton II*, 232 A.3d at 721.

The Supreme Court granted discretionary review to consider whether we erred in determining that the video (itself a public record subject to disclosure under the RTKL) was not exempt from disclosure under FERPA.

8

The Supreme Court held that the plain language of section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i), required the district to prove, by a preponderance of the evidence, that disclosure of the video in fact "would result in the loss of Federal . . . funds by an agency or the Commonwealth." *Easton II*, 232 A.3d at 726. The Supreme Court explained, for the district to prove the applicability of that exemption, it was required to establish all of the conditions set forth in FERPA that would result in the loss of funding to the district stemming from its disclosure of the video. *Id.* Turning to the conditions set forth in section 1232g(b)(1) of FERPA, the Supreme Court identified two conditions the district was required to prove to establish that the disclosure of the video would result in the loss of funding.

First, the district must be an educational agency or institution that either currently receives, or is eligible to receive, funding through an applicable program that would be lost by the district's violation of FERPA. *Id.* at 726-27 (citing 20 U.S.C. §1232g(b)(1) ("No funds shall be made available under any applicable program to any educational agency or institution.")). Second, to lose funding under FERPA, there must be a "policy or practice" of "releasing," "permitting the release of," or "providing access to" protected education records or personally identifiable information contained in those records. *Id.* at 727 (citing 20 U.S.C. §1232g(b)(1)-(2)).

Regarding the threshold condition, *i.e.*, the district's Federal funding eligibility, the Supreme Court concluded that the district was eligible to receive applicable Federal funding and was, therefore, subject to FERPA's requirements. The Court pointed out that the district did not prove this requirement. *Id.* However, because neither Miller nor the lower tribunals raised or disputed the district's Federal funding eligibility, and because such information was readily available in the public domain, the Supreme Court accepted for purposes of its analysis that the district was in fact

9

eligible to receive funding through an applicable program that could be lost by its violation of FERPA. The Supreme Court cautioned, however, that because the burden is on the party asserting the exemption, "such an omission may prove fatal to an agency's attempt to invoke FERPA as a basis for withholding records pursuant to a RTKL request." *Id.*

With regard to the second condition, that there be a "policy or practice" of releasing protected education records, the Supreme Court noted that there was nothing in the record to suggest the district had a "policy or practice" regarding the release of or access to information covered by FERPA. *Id.* The Court concluded that the district failed to demonstrate by a preponderance of the evidence that its disclosure of the requested video would result in the loss of Federal funding under FERPA. *Id.* The Supreme Court emphasized that the "policy or practice" language denotes that there be "repeated or systematic violations of student privacy, as opposed to singular or exceptional instances." *Id.* This, in the Supreme Court's view, precluded a finding that the disclosure of the single requested video at issue qualified as a "policy or practice" as contemplated by sections 1232g(b)(1)-(2) of FERPA. *Id.* Highlighting FERPA's exceptions in section 1232g(b)(2)(A) and (B), the Court further found that the district's disclosure of the video in that instance would be without consequence because it would be at the direction of an OOR or judicial order. *Id.* (citing 20 U.S.C. §1232g(b)(2)(B)). Thus, concluded the Supreme Court, the district failed to demonstrate it would lose Federal funding under FERPA as a result of disclosing the video, and therefore, it could not avail itself of the loss of funds exception to disclosure found in RTKL section 708(b)(1)(i), 65 P.S. §67.708(b)(1)(i).

The Supreme Court next examined whether the district could withhold the video under sections 102 and 305(a)(3) of the RTKL, 65 P.S. §§67.102, .305(a)(3), as

a record that is exempt under "any other state or [F]ederal laws or regulations." *Easton II*, 232 A.3d at 728. As the Supreme Court observed, section 102 of the RTKL defines a "public record," in part, as a record that "is not exempt from being disclosed under any other Federal . . . law or regulation." 65 P.S. §67.102. Section 305(a)(3) of the RTKL provides that a record in the possession of a local agency is presumed to be a public record unless, *inter alia*, "the record is exempt from disclosure under any other Federal . . . law or regulation." 65 P.S. §67.305(a)(3). To avail itself of an exemption from disclosure under these sections, the district had to demonstrate that the video was exempt from disclosure under FERPA.

Because FERPA forestalls funding to schools having a policy or practice of releasing, or providing access to, any personally identifiable information in "education records," the Supreme Court addressed whether the video was an "education record." FERPA defines "education record" as "those records, files, documents, and other materials which-- (i) contain information ***directly related*** to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A) (emphasis added). The Supreme Court, consulting the United States Department of Education's (USDOE) FAQs on Photos and Videos as guidance, found that the video was "directly related" to the students depicted therein. As noted by the Supreme Court, the USDOE guidance document explains the following factors should be considered in determining whether a photo or video is "directly related" to a student:

> The educational agency or institution uses the photo or video for disciplinary action (or other official purposes) involving the student (including the victim of any such disciplinary incident); [and]

> The photo or video contains a depiction of an activity:

11

that resulted in an educational agency or institution's use of the photo or video for disciplinary action (or other official purposes) involving a student (or, if disciplinary action is pending or has not yet been taken, that would reasonably result in use of the photo or video for disciplinary action involving a student) . . .

that shows a student getting injured, attacked, victimized, ill, or having a health emergency . . . or

[t]he audio or visual content of the photo or video otherwise contains personally identifiable information contained in a student's education record.

*Id.* at 729 (citing USDOE FAQs on Photos and Videos under FERPA).

The Supreme court observed that "[u]ndisputedly, the video here 'reflect[s] an interaction between [a teacher] and a student' which became the subject of an investigation, and which was included in an inquiry regarding potential discipline for the teacher." *Id.* at 730. Further, the videographic images of students on a school bus would allow a reasonable person in the school community viewing the video to identify the students with reasonable certainty; thus, the Supreme Court concluded, the video contained personally identifiable information regarding each of the school students visible therein. *Id.* According to the Supreme Court,

[a]s the student is the subject of some interaction with a teacher that warranted preservation of the video for an official purpose, whether the student is receiving discipline, or is the victim of some misconduct, or is one party in an innocuous interaction that was nevertheless part of an official inquiry, the video is as "directly related" to the student as much as it is related to the teacher.

*Id.*

The Supreme Court concluded that the video, which was generated and possessed by the district and depicted a student on a school bus interacting with a school teacher in the presence of other students, was a record both "maintained" by the school and "directly related" to the student who was the subject of the interaction, and was therefore an "education record" of that student within the meaning of FERPA. *Id*. However, this did not end the Supreme Court's inquiry.

The Supreme Court next observed that, ***even though*** the video is deemed an "education record," it could nevertheless still be released under FERPA as a "public record" in redacted form. *Id*. "FERPA regulations do allow schools to release education records or information without consent when the records have been 'de-identified,' that is, when all personally identifiable information has been removed." *Id.* at 729-30 (citing 34 C.F.R. §99.31(b)(1)). The Supreme Court observed that redaction of the students' identities in the video would eliminate the potential privacy harm which the FERPA prohibition seeks to prevent and would eliminate the need for parental consent as well. *Id*. The Supreme Court held that once redacted, the video would not run afoul of FERPA's coverage and thus would remove any argument that the video was not a public record and would further eliminate 65 P.S. §67.305(a)(3) as a basis for exemption, as it no longer would be exempt under Federal law or regulation. *Id*. at 731.

The Supreme Court further recognized that its holding in this regard was consistent with the provisions of the RTKL requiring redaction when a public record contains both information subject to disclosure and information not subject to release.

> Furthermore, the RTKL specifically provides, where a record contains information which is subject to access along with information which is not subject to access and the two cannot be physically separated, "the agency shall redact from the record the information which is not subject to access, and the

13

response shall grant access to the information which is subject to access." [Section 706 of the RTKL,] 65 P.S. §67.706.[10] Thus, insofar as the video itself is a public record subject to disclosure under the RTKL but contains the images of school students which are not subject to disclosure, which, in our view, it is and does, the [d]istrict is obligated to redact [the] students' images by, for example, blurring or darkening portions of the video revealing the students' identities, and to subsequently provide access to the redacted video.

*Id.*

Finally, the Court addressed the privacy interests of third-party students (not to have their identity or locations revealed) implicated by disclosure of the video. *Id.* at 731. As required by *Pennsylvania State Education Association v. Commonwealth Department of Community and Economic Development* (*PSEA*), 148 A.3d 142 (Pa. 2016), the district was obligated to balance the students' and their parents' interests in controlling access to disclosure and dissemination of the children's images in the video against the public's interest in dissemination of those images, and to redact the video as necessary to protect those informational privacy interests. *Easton II*, 232 A.3d at 733. However, because Miller expressly disclaimed any public interest in disclosure of the identities of the students depicted in the video, the district could disclose the video without violating their informational privacy rights by redacting their images in the video. *Id.* at 733.

---

[10] Section 706 of the RTKL concerns redaction of records, and provides in pertinent part:

> If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.

65 P.S. §67.706.

Applying these precepts, the Supreme Court concluded this Court did not err in ordering disclosure of the requested video (albeit based on an entirely different rationale) and directed that the district may release the video, despite its status as an education record, provided that the students' personally identifiable information was redacted before the video was released.[11] *Id.* at 734.

### B. Application of *Easton II* to the Case *Sub Judice*

The burden to prove the applicability of an exemption rests with the School District under 65 P.S. §67.708(a). "Importantly, the local agency has the burden of proving that a record is exempt from public access 'by a preponderance of the evidence.'" *Easton II*, 232 A.3d at 724.

*Easton II* teaches that Pennsylvania's RTKL provides two possible exceptions pursuant to which the video may be exempt from disclosure: (1) RTKL section 708(b)(1)(i) (disclosure would result in the loss of Federal funding); and (2) RTKL section 305(a)(3) (record exempt from disclosure under Federal law). Analysis of either exception requires a preliminary determination of whether the video constitutes an "education record" protected under FERPA. As such, it must first be determined whether the video recording is an "education record" under FERPA.

### 1. Whether the Video is an "Education Record" under FERPA

To establish that a document is an "education record" under FERPA, the document must "directly relate[] to a student" and be "maintained" by the school. 20 U.S.C. §1232g(a)(4)(A).

### a. Directly Related

Pursuant to *Easton II*, a video is "directly related" to a student when the school uses it for disciplinary action (or other official purposes) involving the student

___

[11] Again, only a plurality of the Court joined the decision requiring redaction of the video.

(including the victim of any such disciplinary action), or when the video contains a depiction of an activity that resulted in use of the video for disciplinary action (or other official purposes) involving the student, or that shows a student getting injured, attacked, victimized, becoming ill, or having a health emergency, or when the video otherwise contains personally identifiable information contained in a student's education record. *Easton II*, 232 A.3d at 729 (quoting USDOE FAQs on Photos and Videos under FERPA).

Applying *Easton II*, we find the video in question is "directly related" to the student because it shows the student involved in an altercation with a parent, and this warranted preservation of the video for purposes of disciplining the student. *Easton II*, 232 A.3d at 730. Assistant Superintendent McConnell established that the video captured what happened on the bus during the February 16, 2016 physical confrontation between a student and a parent. The School District downloaded the video for the purpose of investigating each student on the bus to determine whether it should discipline any of the students involved. The video was relied upon during the School District's investigation of the incident and the disciplinary action ultimately imposed against several students and a staff member. (R.R. at 239a; 267a-68a.)

### b. Maintained

The School District also established that the video was "maintained" by it. FERPA requires that the putative record be "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A)(i)-(ii). In *Easton II*, the Supreme Court did not require any specific maintenance protocol for the video and recognized that, so long as "the [d]istrict does not dispute that it maintained the video," this was sufficient to establish the video was "maintained by" the district. *Easton II*, 232 A.3d at 730 n.14. Here, the record

establishes the video is maintained by the School District in a single location and as part of its permanent records. Assistant Superintendent McConnell was charged by the School District with maintaining the video. (R.R. at 25a-26a, 240a, 265a.) She testified that the video was maintained in a fireproof safe locked in the desk inside her office. The video is, therefore, "maintained by" the School District pursuant to *Easton II*.

Because the School District established that the video is both "directly related" to a student and "maintained by" the School District, we find that the video is an "education record" under FERPA and pursuant to *Easton II*.[12]

## 2. Whether the School District Established the Loss of Funds Exemption Under RTKL Section 708(b)(1)(i)

A finding that the video is an "education record" does not end the inquiry. To avail itself of the loss of funds exemption under section 708(b)(1)(i) of the RTKL, the School District had the burden to prove by a preponderance of the evidence that disclosure of the video "would result in the loss of Federal or State funds." 65 P.S. §67.708(b)(1)(i). It failed to do so.

As explained in *Easton II*, for a school district to lose funding under FERPA, two conditions must be met. The school district must currently receive, or be eligible to receive, funding through an applicable program that would be lost by its violation of FERPA, ***and*** the school district must have a "policy or practice" of "releasing," "permitting the release of," or "providing access to" protected education records or personally identifiable information contained in those records. *Easton II*, 232 A.3d at 727 (citing 20 U.S.C. §1232g(b)(1)-(2)).

First, as in *Easton II*, the first condition is not at issue. Neither Fox, nor any of the tribunals below, raised or disputed the School District's Federal funding

---

[12] Fox does not dispute that, under the Supreme Court's holding in *Easton II*, the video at issue is an "education record." (Fox's Suppl. Br. at 5.)

17

eligibility. Accordingly, we conclude that the first condition, *i.e.*, that the School District was eligible to receive applicable Federal funding, was established.

However, the same is not true with respect to the second condition. The School District argues that disclosure of the "education record" (*i.e.*, the video) under these circumstances would amount to a "policy or practice" that would result in its loss of Federal funding under FERPA. (School District's Suppl. Br. at 34.) In other words, it is the School District's position that it will lose Federal funding under FERPA if it was ordered to disclose the video in these RTKL proceedings. We are not convinced.

To lose available funds under FERPA, the school district must engage in repeated or systematic violations of student privacy. *Easton II*, 232 A.3d at 727. The School District argues that it should not be required to establish a "policy or practice" in order to invoke the exemption in section 708(b)(1)(i) of the RTKL. (School District's Suppl. Br. at 33.) However, we do not read *Easton II* as requiring a school district which is the subject of a RTKL request to **prove** it systematically and repeatedly engages in such practice in order to successfully invoke the loss of funds exemption under section 708(b)(1)(i) of the RTKL. When discussing the "policy or practice" condition, the *Easton II* Court was explaining what type of conduct could cause a school district to lose available funds under FERPA, while making clear that a single or exceptional instance does not qualify as a "policy or practice" as contemplated by section 1232g(b)(1)-(2) of FERPA. *Easton II*, 232 A.3d at 727-28. According to *Easton II*, there must be systematic and repeated instances of releasing private student information without parental consent to lose funding. In other words, under FERPA, the punishment for the repeated disclosure of private education records without parental consent is the loss of Federal funding. This is the sort of conduct that could result in a school district losing funding under FERPA – as opposed to a one-time order

18

to release a video in a RTKL dispute. Furthermore, as the *Easton II* Court observed, the School District's disclosure of the video in this instance would be without consequence because it would be at the direction of the OOR or a judicial order. *Id.* (citing 20 U.S.C. §1232g(b)(2)(B)).

Instantly, for the exemption under section 708(b)(1)(i) of the RTKL to apply, it was incumbent upon the School District to establish that it will lose Federal or state funds if it releases the video to Fox in these RTKL proceedings. 65 P.S. §67.708(b)(1)(i). Like the school district in *Easton II*, the School District here relied on FERPA as the basis for its claim that it will lose available funds. However, to lose funds under FERPA, a school district must have, *inter alia*, engaged in a "policy or practice" of disclosing private student information without parental consent. There is nothing in the record which established that the School District has a policy or practice of releasing private school records without parental consent. In fact, Assistant Superintendent McConnell testified that the School District has never been penalized by the USDOE for a violation of FERPA. (R.R. at 274a.) Because a public disclosure of the video at the behest of the OOR or a court would not result in loss of funds under FERPA, we must conclude that the School District failed to establish that it was entitled to withhold public release of the video under the loss of funds exemption in section 708(b)(1)(i) of the RTKL, 65 P.S. §67.708(b)(1)(i).

### 3. Whether the Video is a Public Record Exempt from Disclosure Under RTKL Sections 102 and 305(a)(3)

Next, the School District argues that the video may be withheld under section 305(a)(3) of the RTKL, 65 P.S. §67.305(a)(3) (exempting from disclosure records that are exempt from disclosure under any other Federal . . . law or regulation)

on the basis that it is exempt from disclosure under Federal law or regulation, *i.e.*, FERPA.[13] Again, we disagree.

As *Easton II* teaches, not all "education records" are automatically protected from disclosure under FERPA. FERPA regulations ***allow*** schools to release "education records" or information without consent when all personally identifiable information has been removed. 34 C.F.R. §99.31(b)(1) ("An educational agency . . . may release the records or information without the consent required by [section] 99.30 . . . after the removal of all personally identifiable information."). *Easton II*, 232 A.3d at 729-30. Redaction of the students' identities eliminates the potential privacy harm that the FERPA prohibition seeks to protect and eliminates the need for parental consent as well. *Id.* Once redacted, the video does not run afoul of FERPA's coverage and thus eliminates 65 P.S. §67.305(a)(3) as a basis for exemption, as it no longer would be exempt under Federal law or regulation.[14]

Accordingly, redacting students' images removes any argument that the video is a public record and exempt under Federal law or regulation, and thus removes any argument by the School District that it is exempt under 65 P.S. §67.305(a).

---

[13] Because the parties did not raise it, we did not address whether the video was a public record exempt from disclosure under RTKL sections 102 and 305(a)(3) in our original opinion. Nevertheless, because the Supreme Court included the discussion as part of its analysis in *Easton II*, we directed the parties to provide supplemental briefing on the issue so that we could address it on remand.

[14] The School District urges us not to follow *Easton II* because the Supreme Court did not reach a majority regarding the disclosure of a video that is capable of being redacted. Only three Justices opined it was "clear from the regulations promulgated pursuant to FERPA [that] even an education record ordinarily protected from disclosure . . . may be disclosed without consent if the student's personally identifiable information has been removed." *Easton II*, 232 A.3d at 730 (citation omitted). The remaining Justices opined that the redaction question was not before the Court and they declined to join that part of the decision. *Id.* at 731, 735-37. Regardless of whether the issue was properly before the Supreme Court, the School District has advanced nothing to suggest that the Supreme Court's plurality's analysis of the substantive merits of the issue was incorrect.

20

Furthermore, as in *Eason II*, Fox has indicated that it has no interest in the identity of the other "non-involved" third-party students. (Fox's Suppl. Br. at 14.) Therefore, it is unnecessary for the School District to conduct the balancing test espoused in *PSEA* to weigh these students' rights to privacy against the public's right to know. *See Easton II*, 232 A.3d at 733. Personally identifiable information must be redacted.

### 4. Redaction

Finally, the School District argues that, even if the video was redacted to blur the identity of the student who was involved in the fracas – everyone would know exactly who the student is because the news coverage and public legal filings identify the involved student and the adult by name. The School District argues that redaction would, therefore, not cleanse the video as contemplated by FERPA and the video's disclosure in redacted form would be tantamount to releasing an un-redacted and fully identified education record in violation of FERPA. Therefore, the School District posits, because the video cannot be successfully redacted, it should be exempt from disclosure under FERPA, and the exemption in section 305(a)(3) of the RTKL (record is exempt from disclosure under Federal law) is triggered. 65 P.S. §67.305(a)(3).

We find the argument to be somewhat circular. As the Supreme Court observed in *Easton II*, the purpose of the protective provisions of FERPA is to allow access by parents to the student records and to provide a measure of privacy in those records. *Easton II*, 232 A.3d at 724. If, as the School District alleges, the student involved has already been publicly identified, both in a public hearing and in the press along with the adult involved, then withholding the video would not serve the purposes of protecting the privacy of the student under FERPA. It is thus a stretch on the part of the School District to argue that the video would be exempt from disclosure under FERPA for the reason that the identity of the student is already known.

Alternatively, the School District argues that, even if redaction could remove all personally identifiable information, redaction is not appropriate because the School District established it does not have the technological capability to do so. The School District points out that Assistant Superintendent McConnell testified that the School District does not have the capability to redact, pixelate, or do anything to obscure the images of students on any individual video. (R.R. at 241a.) Therefore, the School District claims, "it has been well-established in the record from the inception of this case that [it] does not have the technological capability to redact the video recording." (School District's Br. at 28.) However, this argument ignores that the trial court did not credit Assistant Superintendent McConnell's testimony that redactions were technologically or financially unachievable. The sole evidence of record to support the claim is the single, unsupported statement of the School District's witness, Assistant Superintendent McConnell, who testified that the School District did not have the ability to redact, pixelate, or do anything to obscure the images of students on any individual video. (R.R. at 241a.). The School District submitted no other testimony nor evidence in support of that statement including on what basis Assistant Superintendent McConnell came to that conclusion. There was no testimony that she had personal knowledge of the technological capabilities of the School District nor that she had consulted with its IT Department to explore what was and was not possible in that regard. In fact, the trial court held that "[a]lthough [Assistant Superintendent McConnell] testified that the [School] District did not have the capability to blur out individual students (N.T. at 14), *it is not impossible to do so*. There are several video editing software and/or programs that would allow for portion of a video recording to be blurred, *i.e.*, student faces and identifying information." (Trial court op., 8/1/17 at 10) (emphasis added).

22

The trial court's observations in this regard are consistent with a Federal circuit court of appeals, which was recently presented with a similar argument in a case under the federal Freedom of Information Act, 5 U.S.C. §552. In *Evans v. Federal Bureau of Prisons*, 951 F.3d 578 (D.C. Cir. 2020), the government claimed it could not segregate out of a prison surveillance video information of non-involved individuals. However, the court was skeptical that the task was impossible and did not accept the evidence:

> [I]t is not at all clear from the government's affidavit why it cannot segregate the portions of the record that do not do so. More specifically, we live in an era in which teenagers regularly send each other screenshots from all sorts of video media. Presumably, most of these teenagers have fewer resources than the United States government. It is not at all clear why the government could not at least isolate some screenshots that would meet the same sort of segregability standards typically applied to printed material.
>
> The government further does not explain why it cannot by use of such techniques as blurring out faces, either in the video itself or in screenshots, eliminate unwarranted invasions of privacy. The same teenagers who regale each other with screenshots are commonly known to revise those missives by such techniques as inserting cat faces over the visages of humans. While we do not necessarily advocate that specific technique, we do hold that the government is required to explain why the possibility of some similar method of segregability is unavailable if it is to claim the protection of the exemption.

*Id.* at 587.

Here, the trial court, as factfinder, concluded that redaction was "not impossible." This Court will not disturb that finding.

23

## Conclusion

Due consideration having been given to the Supreme Court's decision in *Easton II*, we affirm the order of the trial court and remand the matter with instructions to redact the personally identifiable information of all students depicted in the video.

 

_____

PATRICIA A. McCULLOUGH, Judge

 

Judge Fizzano Cannon did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Dauphin School District, :
     Appellant :
         : No. 1154 C.D. 2017
     v.   :
         :
Valerie Hawkins, Fox 43 News and :
the Commonwealth of Pennsylvania, :
Office of Open Records  :

## ***ORDER***

   AND NOW, this 22nd day of April, 2021, the August 1, 2017 order of the Court of Common Pleas of Dauphin County is hereby AFFIRMED. The matter is remanded with instructions to redact the personally identifiable information of all students depicted in the school bus video before disclosing it to Valerie Hawkins, Fox 43 News.

   Jurisdiction relinquished.

        _____
        PATRICIA A. McCULLOUGH, Judge