**[J-25-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| CENTRAL DAUPHIN SCHOOL DISTRICT, | : | No. 88 MAP 2021 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1154 |
| | : | CD 2017 dated April 22, 2021 |
| v. | : | Affirming the Order of the Dauphin |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. 2016-CV-4401- |
| VALERIE HAWKINS, FOX 43 NEWS AND | : | MP dated August 1, 2017. |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, OFFICE OF OPEN | : | |
| RECORDS, | : | ARGUED: April 12, 2022 |
| | : | |
| | : | |
| Appellees | : | |

**OPINION**

JUSTICE DOUGHERTY                    DECIDED: December 21, 2022

In our plurality resolution of *Easton Area School District v. Miller*, 232 A.3d 716 (Pa. 2020) (*Easton Area II*), we determined a school district did not meet its burden to prove a bus surveillance video, requested pursuant to the Right-to-Know Law (RTKL), 65 P.S. §§67.101-67.3104, was exempt from disclosure by operation of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g. We instructed the district to redact students' images and release the video to the requester. On the heels of this decision, we granted discretionary review to consider whether the Commonwealth Court erred when it applied the plurality's analysis under similar circumstances, and ordered redaction and disclosure of the school bus surveillance video it determined to be

an education record subject to FERPA.  For the reasons that follow, we affirm the court's order, and direct the school district to reasonably redact the students' personally identifiable information and release the video.

**Background**

On February 23, 2016, Valerie Hawkins, on behalf of Fox 43 News (collectively, Requester), submitted a RTKL request to Central Dauphin School District (the District), seeking a copy of school bus surveillance video from one week prior, which captured an incident between a 17-year-old member of a District high school basketball team (the student), and a parent of another player (the adult), who allegedly grabbed the student's wrist during their interaction.  The incident occurred in a parking lot outside the high school's gymnasium, while the players and school staff were boarding the school bus following a basketball game.  The adult involved received, and subsequently opposed, a summary citation for harassment related to the incident.  Requester attached a copy of the citation notice from the magisterial district court record to the record request; the notice identified the adult and student by name as the defendant and victim, respectively.  On March 24, 2016, Karen McConnell, the District's open records officer (ORO McConnell), denied the request for access to the video, explaining it was an education record containing "personally identifiable information directly related to a student or students," which, according to the District, protected the video from release under FERPA, and consequently precluded its disclosure under the RTKL as well.  Final Response of District to Valerie Hawkins dated 3/24/2016.

Initially, the ensuing litigation over Hawkins's record request proceeded along a trajectory nearly identical to the appeal of a similar RTKL request made to Easton Area School District one year later, by Express Times reporter Rudy Miller, who sought bus surveillance footage depicting a teacher's alleged rough discipline of an elementary

school student. *See Easton Area II*, 232 A.3d at 719-21. In each case, the requester appealed to the Office of Open Records (OOR) challenging the basis of the district's denial, and pursuant to its procedural guidelines, the OOR invited parties to supplement the record while directing the districts to notify third parties whose confidential information was contained within the requested records of the opportunity to participate in the appeal.[1] *See* Official Notice of Appeal to OOR, No. AP 2016-0583, 3/25/2016, at 1-2; *Easton Area II*, 232 A.3d at 719; *see also* PA. OFFICE OF OPEN RECORDS, Procedural Guidelines, Rev. 9/29/2015, at 8-9.[2] Each of the districts supplemented the record with an affidavit from its open records officer indicating, *inter alia*, the requested bus surveillance video was evidence in a pending district investigation or disciplinary matter, and disclosure of the video would enable the students in it to be identified. *See* Affidavit of ORO McConnell, 3/31/2016; *Easton Area II*, 232 A.3d at 719-20. To the OOR (which ordered disclosure of the video in each case) and common pleas courts (which denied the districts' requests to vacate the orders), the districts argued the bus surveillance videos were "education records" protected from disclosure by FERPA, which the federal

---

[1] Specifically, the OOR Notice states:

**Agency Must Notify Third Parties:** If records affect a legal or security interest of an employee of the agency; contain confidential, proprietary or trademarked records of a person or business entity; <u>or</u> are held by a contractor or vendor, **the agency must notify such parties of this appeal immediately and provide proof of that notice to the OOR within seven (7) business days from the date on this letter.** Such notice must be made by (1) providing a copy of all documents included with this letter; <u>and</u> (2) advising that interested persons may request to participate in this appeal (*see* 65 P.S. § 67.1101(c)).

Official Notice of Appeal to OOR, No. AP 2016-0583, 3/25/2016, at 2 (emphasis in original). Under the OOR's procedural guidelines, agencies are also required to notify and provide an opportunity to object to implicated third parties in response to the initial request. *See* OFFICE OF OPEN RECORDS, Procedural Guidelines, Rev. 9/29/2015, at 2-3. As was the case in *Easton Area II*, there is no indication in the record Central Dauphin School District provided or attempted such notice at either stage in this case. *See Easton Area II*, 232 A.3d at 732.

[2] https://www.openrecords.pa.gov/Documents/Appeals/2015-10-01_Procedural_Guidelines.pdf.

law defines as "those records, files, documents, and other materials which []contain information directly related to a student" and "are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A). In relation to FERPA, and in addition to other asserted exceptions from public disclosure enumerated under Subsection 708(b) of the RTKL, each district claimed the RTKL's loss-of-funds exception applied, *see* 65 P.S. §67.708(b)(1)(i), exempting from access a record which, if disclosed, "would result in the loss of Federal or State funds by an agency or the Commonwealth[.]"[3]

The districts in both cases also relied on the RTKL's broader exclusion of records exempt under other state or federal laws as provided by Sections 102 (defining "public record" as one that is not privileged nor exempt under Section 708 or "any other Federal or State law or regulation or judicial order or decree"), and Subsection 305(a) (presuming a record of an agency is public unless exempt under, *inter alia*, "any other Federal or State law or regulation or judicial order or decree"), *id.* §§67.102, 67.305(a)(3). *See* District's Notice of Appeal and Petition for Review, 6/9/2016 at 3-4, 12 n.3, *citing* 65 P.S. §§67.102, 67.305(a), 67.708(b)(1)(i); *Easton Area II*, 232 A.3d at 720.[4] In both cases, at all three levels of review preceding this Court's consideration, the tribunals below granted the news media's request for disclosure of the bus surveillance video, concluding the

---

[3] In the present case, the District also asserted the video fell within an enumerated exception under 65 P.S. §67.708(b)(17), as part of a noncriminal investigation; this claim was disposed of below and is not raised or implicated herein. *See Cent. Dauphin Sch. Dist. v. Hawkins*, 199 A.3d 1005, 1016-20 (Pa. Cmwlth. 2018) (*Central Dauphin I*), *vacated and remanded on other grounds*, 238 A.3d 337 (Pa. 2020) (*per curiam*).

[4] The *Easton Area* district's bases for denial most consistently focused on exceptions enumerated under RTKL Subsection 708(b), and, as explained further *infra*, only a plurality of this Court viewed the broader definition and presumption provisions as implicated therein. *See Easton Area II*, 232 A.3d at 734-35 (Saylor, C.J., concurring and dissenting), 736-38 (Baer, J. concurring and dissenting). In this case, the District explicitly raised and argued Sections 102 and 305 categorically precluded disclosure of FERPA-protected education records to the OOR and to the trial court.

district failed to meet its burden to prove a relevant RTKL exemption applied because it had not demonstrated the video qualified as an education record warranting any protection under FERPA — either because it was not related to a student's academic performance (as determined by the OOR and trial courts), or because it was only tangentially, as opposed to directly, related to a student. *See In re Hawkins v. Cent. Dauphin Sch. Dist.*, No. AP 2016-0583, 2016 WL 2986981, at *2-3 (Pa. Off. Open Rec., issued May 19, 2016); *Cent. Dauphin Sch. Dist. v. Hawkins*, No. 2016-CV-4401-MP, at 8-12 (C.P. Dauphin County filed Aug. 1, 2017) (unpublished memorandum); *Cent. Dauphin Sch. Dist. v. Hawkins*, 199 A.3d 1005, 1014 (Pa. Cmwlth. 2018) (*Central Dauphin I*), *vacated and remanded*, 238 A.3d 337 (Pa. 2020) (*per curiam*); *see also Easton Area Sch. Dist. v. Miller*, 191 A.3d 75, 80-83 (Pa. Cmwlth. 2018) (*Easton Area I*); *Easton Area II*, 232 A.3d at 725-26. The videos were not viewed *in camera* at any level in either case.

The particular circumstances of Central Dauphin's case unfold primarily by way of District ORO McConnell's sworn affidavit submitted to the OOR and complementary testimony before the court of common pleas. The affidavit stated, *inter alia*: the video recording is maintained by the District and "is an 'education record' under FERPA which requires the [District] to keep the record confidential"; the students' personally identifiable information cannot be redacted from the video "because [the District] does not have the technological ability to redact the video recording[,]" however, "even if the [District] had the technological ability . . . the subject of the video recording[] ha[s] been covered on multiple occasions in the news media" which "identify the students in the recording as members of the [school's] basketball team[,]"and "[t]herefore . . . the students' identities w[ould] still be known to the Requester"; in addition, the District "may be financially penalized through loss of [f]ederal funds if it permits the release [of] records protected by

FERPA such as the video recording"; and, the video was being used in the District's official probe into the incident. Affidavit of ORO McConnell, 3/31/2016.

To the trial court, ORO McConnell testified in her role as the District's assistant superintendent for finance and administrative operations, which she indicated also included responsibilities for discipline of students and staff, and oversight of bus transportation, and she was personally involved in the investigation of the incident in this matter. *See* N.T., 3/30/2017 at 6-7, 10. McConnell explained each of the school's buses included two cameras mounted above the driver's head, one facing the back of the bus and one facing the door, and each ran continuously on a loop once the driver turned on the ignition, capturing high-resolution digital video and saving it to a hard drive over older footage; the hard drive recorded over itself approximately every two weeks. *See id.* at 7-8, 28. This video footage is reviewed by District personnel only "if there is a problem[,]" such as a disciplinary or safety issue, in which case a request for the footage is typically made by a principal to the District's transportation director. *Id.* at 7-9. Upon such a request, the bus camera's hard drive is removed, and the relevant segment of footage is extracted and saved on a separate drive. *See id.* at 7-9, 38-39. Asked if she "kn[e]w whether or not the [D]istrict has the ability to redact or pixelate or do anything to obscure the images of students on any individual video recording[,]" ORO McConnell responded, "[w]e do not have the capability of doing that." *Id.* at 14. In this instance, approximately ten minutes of relevant footage from each bus camera was pulled in response to concerns communicated by students' parents. *See id.* at 29. The District extracted and reviewed the footage as part of its investigation of those concerns, in a weeks-long process involving interviews of students, staff, and parents, which resulted in discipline of one staff member and at least one student. *See id.* at 10-11, 40-42. Each of the students in the video can be identified by the images of their faces as well as the jersey numbers on their

gear. *See id.* at 8, 11-12, 41. A shorter, approximately one-minute-long segment of the footage was also shown in a separate court hearing regarding the citation of the adult involved in the incident, who was not a member of the school staff. *See id.* at 43-44, 49-51.

On cross-examination, ORO McConnell testified, because her role was in operations and finance, she was "very rarely" involved in disciplinary matters and could not think of any others in which she had participated; she also did not have knowledge of how students' disciplinary records were maintained, but the footage of this incident was maintained in a safe in her office as the open records officer, not because of any role she played in the investigation. *Id.* at 40-44; *see id.* at 13. When asked if the news media had reported the name of the student after the involved-adult's hearing on the citation, McConnell responded, "I honestly don't know the answer to that[,]" and further explained it was not just a matter of recollection, but that she did not know because she does not read or watch the news. *Id.* at 34. When asked if she later became aware the news had released the student's name, she stated, "I'm going to have to take your word for it. I don't know that[,]" and again replied she does not read or watch the news. *Id.* at 36. The only other evidence offered by Requester was a news article published by PennLive regarding the hearing and dismissal of the adult's harassment citation resulting from the incident, which identified the student by name as the complainant who testified in support of the charge. *See id.* at 52; PennLive article dated 5/25/2016, Hawkins-Fox Cmwlth. Ct. Brief at Exhibit 1.

In support of its decision to order disclosure of the record, the trial court noted inconsistencies in ORO McConnell's statements, and found her testimony regarding personal involvement in the matter not credible; with regard to redaction, the court observed, "[a]lthough Ms. McConnell testified that the District did not have the capability

to blur out individual students . . . it is not impossible to do so." *Central Dauphin Sch. Dist.*, No. 2016-CV-4401-MP, at 10 (internal citation omitted); *see id.* at 15. Ultimately, the court concluded the District failed to meet its burden to demonstrate the school bus video recording was an education record "exempt from disclosure under FERPA, or any of the enumerated exceptions outlined in Section 708 of the RTKL." *Id.* at 16-17. As a result, the court ruled the video was a public record pursuant to the RTKL, while noting "in order to be disclosed, the student[s'] faces and identifying information must be blurred out or redacted in accordance with 65 P.S. §67.706."[5] *Id.* at 12.

The District filed an appeal, and a three-judge panel of the Commonwealth Court affirmed and ordered disclosure of the video. *See Central Dauphin I*, 199 A.3d at 1020. Notably, however, this initial *Central Dauphin I* decision was based on the intermediate court's newly-articulated analysis directing disclosure of the Easton Area District's school bus surveillance video, which was then pending review before this Court. *See Easton Area I*, 191 A.3d at 82 (school bus video depicting teacher disciplining student was not an "education record" protected by FERPA because it directly related to the teacher's performance, and was only tangentially related to student); *Central Dauphin I*, 199 A.3d at 1013-14 (applying *Easton Area I*, school bus surveillance video depicting confrontation between student and adult, for which the adult was cited, was not directly related to a student and thus was not an education record invoking FERPA). Although a majority of this Court affirmed the *Easton Area I* panel's order to disclose the video, our disposition on its appeal in *Easton Area II* expressed three diverging, non-majority interpretations of

---

[5] In its subsequent statement in lieu of a Rule 1925(a) opinion, the trial court clarified it had not reviewed the video and therefore could not say whether it contained any identifying information; however, the court did not consider the players' images, names, and jersey numbers to be protected information because they appeared on the District's website and in game programs, and their presence during the incident was covered by the media. *See Cent. Dauphin Sch. Dist. v. Hawkins*, No. 2016-CV-4401-MP (C.P. Dauphin County filed Oct. 13, 2017) (statement in lieu of opinion).

the relevant legal principles, among them the plurality-supported conclusion the Easton Area District's bus surveillance video was **both** an education record under FERPA **and** subject to disclosure under the RTKL following redaction of the students' images, which differed substantially from the *Easton Area I* panel's resolution of the matter. *See Easton Area II*, 232 A.3d at 734 (stating the plurality conclusion and mandate), 734-36 (Saylor, C.J., concurring and dissenting), 736-38 (Baer, J. concurring and dissenting); *Easton Area I*, 191 A.3d at 82. Consequently, upon the District's petition for allowance of appeal with regard to *Central Dauphin I*, we vacated the panel's order to disclose the video and remanded the matter back to the Commonwealth Court for proceedings consistent with our decision in *Easton Area II*, limited to whether the panel erred when it determined the Central Dauphin District's school bus surveillance video was not an education record under FERPA. *See Central Dauphin*, 238 A.3d 337 (Pa. 2020) (*per curiam*).

### Easton Area II

Though our resolution of *Easton Area II* recently addressed whether release of bus surveillance video was precluded under FERPA, the Court's variegated responses thereon stemmed from the Easton Area District's tailoring of its position within the context of the loss-of-funds exception under RTKL Section 708(b)(1)(i), *i.e.*, that disclosure of the video would result in the loss of federal funds to the school or the Commonwealth. Consequently, the central issue in our analysis was whether the district met its preponderance of the evidence burden to meet that exception. *See Easton Area II*, 232 A.3d at 725. A five-justice majority of the Court agreed the district had not: we concluded FERPA generally mandates federal funding "shall be made unavailable" to otherwise eligible educational agencies having a "policy or practice" of releasing certain information outside of the manner prescribed by federal law. *Id.* at 736 (Baer, J., concurring in part); *see* 20 U.S.C. §1232g(b). And, because the district had not demonstrated any more than

the singular instance of potentially disclosing the identities of students on a surveillance video during an alleged altercation, and FERPA further excuses otherwise noncompliant disclosures which are compelled by judicial order, we held the district had not established any contravention of FERPA to support how loss of funding could result. *See id.* at 725-27 (plurality) (applying 65 P.S. §67.708(b)(1)(i) *and* 20 U.S.C. §1232g(b)(1), (b)(2)(A)-(B)); *id*. at 736 (Baer, J., concurring in part).

The *Easton Area II* plurality additionally viewed the RTKL's express exemptions under Sections 102 and 305 — defining "public record" to exclude any record exempt from disclosure by federal law or regulation, *see* 65 P.S. §67.102, and likewise excluding such a record from the presumption a record possessed by an agency is public, *see id.* §67.305(a)(3) — as foundational to whether ordering disclosure of the bus surveillance video would release protected information in violation of our law, and therefore proceeded to review the soundness of the preceding tribunals' preclusion of the video from the ambit of education records under FERPA. *See id.* at 725 & n.7, 728-31. This examination of FERPA's parameters identified key features of the protections afforded by an educational institution's compliance with the federal law: first, it provides a right of access to education records for the parent and student only, and specifies a list of conditions under which an **identified** student's education records may be accessed without the parent's or student's consent such as, for example, financial aid applications, *see* 20 U.S.C. §1232g(b)(1); second, it restricts the release of "any **personally identifiable information** in education records" to those specified conditions, except upon consent or in compliance with a judicial order or subpoena so long as notice is provided, *see id.* §1232g(b)(2) (emphasis added); and thus, as the federal law's attending regulations recognize, institutions may release education records to other parties, without consent, when the records have been "de-identified," that is, when all personally-identifiable information has been removed.

*Easton Area II*, 232 A.3d at 728-30, *citing* 34 C.F.R. §99.31(b)(1) (educational agency "may release the records or information without the consent required . . . provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable"). The plurality reasoned students' images in the video would constitute personally identifiable information under the definition provided in the regulations, which includes "'information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty[.]'" *Id.* at 728, *quoting* 34 CFR §99.3.

As to whether the bus surveillance video could be "directly related" to the students therein, and therefore an education record subject to FERPA, the *Easton Area II* Court considered U.S. Department of Education (USDOE) guidance explaining a "context-specific" and "case by case basis examination" would demonstrate a direct relationship if, *inter alia*, the school uses or would reasonably use video of the incident depicted for disciplinary action, or other official purposes involving the students, including any participants in an altercation and the victim of any incident. *Id.* at 729. The same USDOE guidance further instructs that, prior to releasing an education record of multiple students to the parent of any one student, "'[i]f the educational agency or institution can reasonably redact or segregate out the portions of the video directly related to other students, without destroying the meaning of the record, then the educational agency or institution would be required to do so'" prior to providing access. *Id.*, *quoting* FAQs on Photos and Videos under FERPA, U.S. Dep't of Educ., https://studentprivacy.ed.gov/faq/faqs-photos-and-videos-under-ferpa (last visited December 14, 2022). Accordingly, because the disciplined student in the Easton Area District's video was "the subject of some interaction

with a teacher that warranted preservation of the video for an official purpose, whether the student is receiving discipline, or is the victim of some misconduct, or is one party in an innocuous interaction that was nevertheless part of an official inquiry," we reached a majority-supported view that the video was as "directly related" to the student as it was to the adult, and was therefore an education record of that student within the meaning of FERPA.[6] *Id.* at 730; *see id.* at 735 (Saylor, C.J., concurring in part) (agreeing the video is an education record).[7]

As the endcap to its analysis, the *Easton Area II* plurality observed, despite the laudable purpose of our open records law, its scarce consideration of the informational privacy rights of third parties implicated in government-maintained records was particularly problematic within the context of a request for surveillance video of school children, yet the responsibility for balancing those interests remains diffused. Although the agencies bear the obligation to perform such balancing in the first instance, and the constitutional considerations in play might necessitate redactions not otherwise permissible under the RTKL's provisions, the record requestor in *Easton Area II* had specifically disclaimed any interest in the identities of the students; thus we perceived no

---

[6] With respect to the requirement an education record be "maintained by an educational agency or institution," we declined to engage with the *Easton* Requester's contrary argument given the district did not dispute it maintained the video "and, in any event, it is difficult to fathom how the [d]istrict would furnish disclosure of a record it did not maintain[.]" *Easton Area II*, 232 A.3d at 730 n.14 (plurality).

[7] Four justices did not consider further analysis, or any discussion of redaction, to be within the scope of the issue before the Court at that juncture, and only a plurality joined the lead opinion's conclusion — holding the students' personally identifiable information, *i.e.*, their images in the video, were protected from disclosure under FERPA and thereby exempt under the RTKL, but a student's de-identified education record, *i.e.*, the video itself, was not exempt and therefore must be redacted. *See Easton Area II* at 731, *citing* 65 P.S. §67.706 (where a record contains information subject to access along with information not subject to access and the two cannot be physically separated, "the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access").

need to remand the case for further balancing, and ordered the district to redact and release the bus surveillance video. *See id.* at 731-34.

<u>*Central Dauphin II*</u>

Returning to the present case on remand after *Easton Area II*, the Commonwealth Court, following supplemental briefing, again affirmed the trial court, and ordered redaction of the students' personally identifiable information from the video and disclosure, under a revised analysis, departing from the limitations it placed on the scope of an "education record" in *Easton Area I*. *See Central Dauphin Sch. Dist. v. Hawkins*, 253 A.3d 820, 823-24 (Pa. Cmwlth. 2021) (*Central Dauphin II*). The *Central Dauphin II* panel mirrored the *Easton Area II* analysis in nearly all respects. First, the video depicted a student engaged in an altercation with an adult, and was preserved for disciplinary purposes relating to at least one student and one staff member, therefore it was directly related to a student, and second, the District did not dispute it maintained the video, which ORO McConnell kept locked in her office; thus the panel determined the video constituted an education record under FERPA's definition. *See id.* at 830-31. With regard to the RTKL's loss-of-funds exception under Section 708(b)(1)(i), the panel likewise concluded the District did not meet the burden delineated by the majority in *Easton Area II*, as it failed to demonstrate how a court-ordered disclosure of an education record would be considered a "policy or practice" of providing unlawful access to protected information, in a manner sufficient to trigger a loss of funds under FERPA and thus warrant exemption from disclosure under the RTKL. *See id.* at 832-33.

Turning to RTKL Sections 102 and 305, the panel observed the assessment of FERPA in *Easton Area II* demonstrated that not all education records are automatically protected from disclosure, given the law's permission to release education records without consent when all personally identifiable information has been removed. *See id.*

at 833, *citing* 34 C.F.R. §99.31(b)(1).  In this vein, the *Central Dauphin II* panel concluded "[r]edaction of the students' identities eliminates the potential privacy harm that the FERPA prohibition seeks to protect" against and "redacting students' images removes any argument that the video is [not] a public record and exempt under Federal law or regulation, and thus removes any argument by the School District that it is exempt under 65 P.S. §67.305(a)." *Id.*  Regarding the District's assertions it could not redact, and could not remove all personally identifiable information because the student and adult had already been publicly identified in news coverage, the panel considered the latter argument to be circular, *i.e.*, FERPA's purpose of providing some privacy in personally identifiable information would not be served by withholding a record when the person's identity is already publicly known.  *See id.* at 834.  Reviewing the record, the panel observed the trial court discredited ORO McConnell's testimony, which lacked any indication of personal knowledge or other support in the record for her statement the District did not have the ability to redact the video, and thus declined to disturb the trial court's finding that "redaction was 'not impossible.'"  *Id*. at 835.  Because Requester indicated in its supplemental brief it had no interest in the identities of the other "non-involved" third-party students, the panel viewed remand to conduct a balancing test of the students' informational privacy rights against the public's right to know as unnecessary, and ordered "[p]ersonally identifiable information must be redacted."  *Id.* at 833.

The District appealed the Commonwealth Court's decision, and we granted allowance of appeal to examine whether, in light of our *Easton Area II* decision and the multiple opinions of this Court expressed therein, the Commonwealth Court "committed reversible error by ordering disclosure and mandating redaction of a student education record that is exempt from public access under state and federal law — specifically,

FERPA and Section[s] 102 and 305(a) of the Pennsylvania Right-to-Know-Law[.]" *Cent. Dauphin Sch. Dist. v. Hawkins*, 268 A.3d 376 (Pa. 2021) (*per curiam*).

## Arguments

<u>The District</u>

Foremost, the District argues the redaction provision set forth in RTKL Section 706 is inapplicable to records that fall within a statutory exemption; that is, if a record is not a "public record" by definition under Section 102, or likewise "presumed to be a public record" under Section 305, then it is not subject to redaction under Section 706.[8] Appellant's Brief at 23-25, 35, *citing* 65 P.S. §§67.102 (defining "public record" as a record of an agency that "is not exempt under section 708[ or] from being disclosed under any other Federal or State law or regulation or judicial order or decree[ or] is not protected by a privilege"), 67.305 (record is presumed public unless exempt from disclosure under Section 708 or other law, decree, or privilege); *see also* 65 P.S. §67.706 (requiring redaction of "information which is not subject to access" from, and subsequent disclosure of, public record otherwise subject to public access). Collecting Commonwealth Court cases, the District observes, "'[i]f a record is exempt under Section 708(b), it is not a public

---

[8] Section 706, titled "Redaction," provides,

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.

65 P.S. §67.706.

record subject to disclosure under the RTKL. If a record is not exempt from disclosure, but contains information that is not subject to access, the agency may discharge its duty by providing redacted records [under Section 706]. Conversely, if a record is exempt from disclosure under the RTKL and thus is not a public record, it need not be redacted in accordance with Section 706 of the RTKL.'" Appellant's Brief at 28, *quoting Com. Dep't of Labor & Indus. v. Simpson*, 151 A.3d 678, 682 (Pa. Cmwlth. 2016) (emphasis omitted); *see id.* at 26-30, *quoting*, *e.g.*, *Dep't of Health v. Off. of Open Recs.*, 4 A.3d 803, 815 (Pa. Cmwlth. 2010) ("[T]he [Section 706] redaction requirement only applies to records that are determined to be 'public records.'"). Here, the District contends, the record is exempt from disclosure under FERPA, a federal law, and therefore it is by definition not a public record and the redaction provision does not apply. In this vein, the District argues the panel's application rewrites Section 706 by striking "public" and mandating redaction of **all** records, which renders pointless RTKL Section 306 ("[n]othing in this act shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree"), and prohibits an agency from exercising any discretion under Subsection 506(c) (authorizing agency discretion to make otherwise exempt records accessible for inspection if disclosure is not prohibited under other federal or state law, decree, or privilege). *See id.* at 35-36, *citing* 65 P.S. §§67.306, 67.506(c).

The District maintains this view is entirely consistent with the *Easton Area II* plurality decision, which did not foreclose the exemption of bus surveillance video under other law or other circumstances, much less require its disclosure. *See id.* at 39-40, *quoting Easton Area II*, 232 A.3d at 737 (Baer, J., concurring in part) ("[T]he [Easton Area] District failed to present a developed claim that it is entitled to withhold the video or any component thereof from disclosure on the discrete bases of Section 102 and Subsection

305(a)(3) of the RTKL as cited above. Additionally, the lower tribunals did not address the applicability of those provisions to the requested video. . . . [This] position should not be interpreted as one foreclosing the possibility that other RTKL provisions or legal principles, not presently before the Court, may apply to exempt from disclosure a record such as the requested video[.]"). In addition, the District suggests FERPA does not contemplate public access to education records, but rather permits access to parents and students while setting the conditions for providing protected information to other entities, and although FERPA regulations allow a school's release of education records without parental consent when the record has been de-identified, they do not require such a disclosure. *See id.* at 40, *citing* 34 C.F.R. §§99.30-99.39. [9]

Assuming, *arguendo*, Section 706 does apply, the District contends it was error to mandate redaction here, where "the personally identifiable information of the student involved cannot be de-identified through redaction, thereby foreclosing disclosure of the video without parental consent under FERPA's regulations[.]" *Id.* at 46; *see also id.* at 41-42, *quoting* 65 P.S. §67.706 ("The agency may not deny access to the record **if** the

---

[9] The Pennsylvania School Boards Association (PSBA), participating as *amicus curiae*, advanced arguments substantially aligned with the District regarding the application of RTKL Section 706. PSBA additionally emphasizes its "grave concern" with the *Easton Area II* Court's majority-supported position that a loss of funds under FERPA required a school entity's demonstrated "policy or practice" of unauthorized disclosure of education records in order to fall within the RTKL loss-of-funds exception under Subsection 708(b)(1)(i). Brief for *Amicus* PSBA at 11-12 n.1. According to PSBA, whether an individual school district has such a policy or practice is not dispositive; rather, if state law is construed to require disclosures of student records in violation of FERPA, statewide eligibility for FERPA funding is at risk. *See id.* Notably, though the loss-of-funds exception was the central issue addressed in our *Easton Area II* decision, this aspect of the panel's *Central Dauphin II* decision is not encompassed or implicated within our grant of allocatur in this appeal, and we do not address it anew herein. As we have observed, however, the access and exemption provisions of both the RTKL and FERPA are highly sensitive to peculiar facts and circumstances, and an agency's failure to meet its burden under one set of variables does not construct a policy of disclosure in all others. *See Easton Area II*, 232 A.3d at 737 (Baer, J., concurring in part).

information which is not subject to access **is able to be redacted**.") (emphasis provided by District). The District first asserts "unrefuted record evidence shows that the District lacks the technological capability to redact the video," and notes, under the RTKL, an affidavit based upon the personal knowledge of an agency's representative is sufficient to meet the preponderance of the evidence standard; in this case, the District observes, Requester had the opportunity to cross-examine the affiant regarding redaction but did not, and no other evidence in the record supports a contrary finding regarding the District's technological capabilities. *Id.* at 41-45. Notwithstanding its purported lack of redaction capacity, the District also argues the only exception for which FERPA allows the unconsented release of an education record still mandates "'the removal of all personally identifiable information'" and disclosure only after the institution "'has made a reasonable determination that a student's identity is not personally identifiable[.]'" *Id.* at 47, *quoting* 34 C.F.R. §99.31(b)(1) (emphasis omitted). The District maintains this cannot be accomplished here because the personally identifiable information in the video includes more than just the students' faces and jersey numbers, *i.e.*, as a result of Requester's and the public's knowledge of the incident, the student's actual identity cannot be redacted. *See id.* at 46-51. According to the District, in such a situation, FERPA requires "more, not less, protection" of student privacy, as is demonstrated by its regulations defining personally identifiable information to include "'information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty'" or is "'requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.'" *Id.* at 51-52 (emphasis omitted), *quoting* 34 C.F.R. §99.3(f), (g). The District argues that, because of the news coverage

and public legal filings, both factors are encompassed here, and redacting the involved student's face cannot de-identify the record.  *See id.* at 51-53.

Lastly, referring to the *Easton Area* decisions, the District argues "'[w]hat's past is prologue[,]'" and where the *Easton Area II* plurality identified the potential dangers of disclosing school surveillance videos via public record requests in light of students' and families' lack of control in the matter, the Court here should perform a balancing test with regard to the students' informational privacy rights.  *Id.* at 54-57, *quoting* WILLIAM SHAKESPEARE, THE TEMPEST,  act II, scene i, line 253, *and citing*, *inter alia*, *Easton Area II*, 232 A.3d at 731 ("In addition to obvious safety concerns, such a disclosure also necessarily implicates the students' right to informational privacy — that is, the right of the individual to control access to, or the dissemination of, personal information about himself or herself — which this Court has explicitly held must be considered and balanced against the public interest when individuals who are not themselves a party to the request for access appear in the content of records subject to public disclosure under the RTKL.") (quotation marks omitted); *Pa. State Educ. Ass'n v. Com., Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 158 (Pa. 2016) (*PSEA II)* (requiring agencies to balance constitutional privacy rights of third parties implicated in public record requests).  However, rather than allowing disclosure of a redacted video to a requester who expressly disclaims interest in the identities of the students, as was the case in *Easton Area II*, the District argues the Court in this case should conclude the video cannot be released, even in redacted form, to this Requester, who knows the identity of the student to whom the education record is directly related, and has only disclaimed interest in the identity of the "'non-involved'" students, a fact the panel erroneously relied upon to the exclusion of the involved student's privacy interest.  *See id.* at 55-56, *quoting Central Dauphin II*, 253 A.3d at 833 ("'[Requester] has indicated that it has no interest in the identity of the other 'non-involved'

third-party students[,] it is unnecessary for the School District to conduct the balancing test[.]'").

<u>Requester</u>

Requester agrees, under FERPA and in accord with the *Easton Area II* lead opinion's analysis, the video is an education record. Requester argues, however, just like any other record of an agency, an education record is presumed to be a public record under the RTKL unless the agency meets its preponderance burden to prove otherwise. *See* Appellees' Brief at 6, *citing Bowling v. Off. of Open Recs.*, 75 A.3d 453, 457 (Pa. 2013); 65 P.S. §67.305 (agency record presumed public unless exempt under Section 708, privilege, or other state/federal law or judicial order/decree). Requester indicates there is no provision of FERPA or the RTKL categorically exempting education records from disclosure; rather, FERPA's regulations provide the proper conditions for their release, *i.e.*, once personally identifiable information that would reveal a student's identity has been removed, education records may be publicly disclosed, and the RTKL conditions nondisclosure of such a non-categorical exemption on the proof of loss of federal funds.[10] *See id.* at 7-8, *citing* 34 C.F.R. §99.31(b)(1) (agency may release education records or information without consent "after the removal of all personally identifiable information provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable"); 65 P.S. §67.708(b)(1) (exempting from public access "[a] record, the disclosure of which[ ] would result in the loss of Federal or State funds by an agency or

_____

[10] Responding to the District's argument the video cannot be disclosed because the District lacks the capability to redact, *Amici* Pennsylvania NewsMedia Association and Reporters Committee for Freedom of the Press contend, "[w]hen a public agency uses video technology as a means of surveilling the public, it has a concomitant duty to ensure it can facilitate public access when required by law. Agencies cannot be permitted to use technology for their own purposes but disclaim technology when it is necessary for public oversight and accountability." Brief for *Amici* Pa. NewsMedia Assoc., *et al.* at 22.

the Commonwealth"). Requester observes a majority of justices in *Easton Area II*, which included the plurality, agreed the bus surveillance video was an education record, and yet the plurality still held those records were not categorically exempt under RTKL Sections 102 and 305, but instead were public and required redaction of students' personally identifiable information. *See id.* at 10-11 & n. 4, *citing Easton Area II*, 232 A.3d at 729-31 (plurality); *Easton Area II,* 232 A.3d at 735 (Saylor, C.J., concurring in part) (viewing bus surveillance video as an education record, but would hold it was therefore exempt under FERPA and RTKL's loss-of-funds exception under Subsection 708(b)(1)(i)). In Requester's view, the *Easton Area II* plurality's position was not joined by a majority only because four justices, with two sets of diverging opinions, did not consider exemptions under Sections 102 and 305 to be properly before the Court in that case. *See id.* at 10 & n.4, *citing Easton Area II*, 232 A.3d at 737-38 (Baer, J., concurring in part) (district's failure to meet its burden under the loss-of-funds exception, and failure to develop claim RTKL Sections 102 and 305 entitled its withholding of the video or its components, required disclosure of the school bus surveillance video with no redactions). Here, where Sections 102 and 305 are the RTKL provisions solely accepted for review, Requester argues the panel was correct to apply the *Easton Area II* plurality's analysis, that is, "'to avail itself of an exempt[ion] from disclosure under RTKL Subsection 305(a)(3), the District had the burden of proving the school bus surveillance video was exempt from disclosure to a public record requester under FERPA, which requires a context-specific (*i.e.*, fact-sensitive) assessment constrained by competing obligations to maintain student confidentiality alongside public transparency, notwithstanding its own interests.'" *Id.* at 12, *quoting Easton Area II*, 232 A.3d at 730.

Requester contends the present case is a "perfect example" of why education records should not be categorically exempt from disclosure, as the bus surveillance video

does fit the broad definition of an education record, but it contains no confidential information. *Id.* at 12-13. According to Requester, the District did not meet its burden to show the video contained protected information, could be used to discover the students' identities, or could not be redacted, but instead merely asserted that individuals who already knew the students could identify them by their faces or information on their jerseys, and baldly claimed it lacked the capability to redact. Requester asserts the video captured a highly public altercation in a public school parking lot, regarding which the student later testified in a public hearing where portions of the video were shown; in addition, the students had just participated in a basketball game, and even if not redactable, their images in connection with an official school activity were already "directory information" and disclosable without consent. *See id.* at 13, 19-20, *citing* 20 U.S.C. §1232g(a)(5)(A) ("directory information" includes, *inter alia*, student's name, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received); 20 U.S.C. §1232g(b)(1) (protecting from release "personally identifiable information contained [in education records] other than directory information").

**Discussion**

School districts are local agencies subject to the RTKL's public record access provisions required to provide access to public records in accordance with its provisions. *See Easton Area II*, 232 A.3d at 724; 65 P.S. §67.302(a). A "public record" is defined as, *inter alia*, a record of a local agency that: "(1) is not exempt under section 708;[ ] (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." *Id.* §67.102 (footnote omitted). Similarly, the RTKL presumes a record in the possession of a local agency, *e.g.*, a school district, is a public record unless, *inter alia*, the record is exempt from disclosure under

Section 708 or any other federal or state law or regulation. *See id.* §67.305(a)(1), (3). To support a denial of access to a record within its possession, an agency has the burden of proving the record is exempt from public access by a preponderance of the evidence, *see id.* §67.708(a)(1), which is "tantamount to a 'more likely than not' inquiry[.]" *Popowsky v. Pa. Pub. Util. Comm'n*, 937 A.2d 1040, 1055 n.18 (Pa. 2007). "Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017) (quotation and citations omitted).

FERPA, together with its regulations, 34 C.F.R. §§99.1-99.67, "affords parents the right to have access to their children's education records, the right to seek to have the records amended, and the right to have some control over the disclosure of **personally identifiable information from the education records**." USDOE, *What is FERPA?*, PROTECTING STUDENT PRIVACY, https://studentprivacy.ed.gov/faq/what-ferpa (last visited December 14, 2022) (emphasis added). As explained in *Easton Area II* and *supra*, inspection of the federal law's access and nondisclosure requirements reveals the critical exemption from disclosure under FERPA is not the entire category of education records, as the District advances, but rather the students' personally identifiable information. *See Easton Area II*, 232 A.3d at 728-31. Despite the District's view the plurality's assessment in this regard is not controlling, it does not offer any reason tending to indicate the assessment was incorrect; nor is one evident from the concurring and dissenting opinions declining to join that portion of the lead opinion, as they viewed the scope of review as confined to only the Easton Area District's asserted loss-of-funds exception under RTKL Section 708. *See id.* at 734-35 (Saylor, C.J., concurring and dissenting), 736-37 (Baer, J. concurring and dissenting). Accordingly, as with any other record in a local agency's possession, education records in a school district's possession are presumed public, and

the District had the burden to prove it was exempt from disclosure by a preponderance of the evidence. Furthermore, this view is consistent with the District's observations regarding the RTKL's redaction provision under Section 706: where an education record, as defined and regulated under FERPA, is presumed to be public rather than categorically exempt, and not proven otherwise under the circumstances of a request, "but contains information that is not subject to access, the agency may discharge its duty by providing redacted records" under Section 706 of the RTKL. *Simpson*, 151 A.3d at 682; *see* 65 P.S. §67.706.

In this instance, the District has not met its burden to show the video, by virtue of being an education record, is exempt from disclosure under Section 708 or any other law (*i.e.*, FERPA), order, or privilege. *See* 65 P.S. §§67.102, 67.305(a). Thus, as we determined with respect to the bus surveillance video in *Easton Area II*, "insofar as the video itself is a public record subject to disclosure under the RTKL but contains the images of school students which are not subject to disclosure, . . . the District is obligated to redact students' images by, for example, blurring or darkening portions of the video revealing the students' identities, and to subsequently provide access to the redacted video." *Easton Area II*, 232 A.3d at 731; *see also* 65 P.S. §67.706.

The District aptly notes, however, under Section 706 of the RTKL, "[t]he agency may not deny access to the record **if the information which is not subject to access is able to be redacted**." 65 P.S. §67.706 (emphasis added). Here, the District's first contention, that its lack of redaction capacity is sufficiently established in the record via ORO McConnell's "unrefuted" affidavit and testimony, is unavailing. Appellant's Brief at 42. We have said, "the proposition that OOR appeals officers and courts lack competency to assess the adequacy and probity of an agency affiant's characterization of the record or the credibility of its effects assessment is untenable." *ACLU of Pa. v. Pa. State Police*,

232 A.3d 654, 669 (Pa. 2020). Even when an affiant's veracity and good faith are wholly unquestioned, the sufficiency of its attestation may be discredited. *See id.* Such is not the case here, however, where the factfinding trial court observed unreconciled inconsistencies and expressed clear doubt regarding the finance administrator's personal knowledge of both the District's investigation and its technological capacity.[11] Borrowing an observation from the D.C. Circuit Court of Appeals regarding prison surveillance video, the Commonwealth Court keenly illustrated the strain associated with acceptance of the District's assertion:

> [I]t is not at all clear from the government's affidavit why it cannot segregate the portions of the record that do not [invade privacy]. . . .
>
> The government further does not explain why it cannot by use of such techniques as blurring out faces, either in the video itself or in screenshots, eliminate unwarranted invasions of privacy. The same teenagers who regale each other with screenshots are commonly known to revise those missives by such techniques as inserting cat faces over the visages of humans. While we do not necessarily advocate that specific technique, we do hold that the government is required to explain why the possibility of some similar method of segregability is unavailable if it is to claim the protection of the exemption.

*Central Dauphin II*, 253 A.3d at 835, *quoting Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020). Similarly, we note the trial court determined, despite ORO McConnell's testimony to the contrary, "the capability to blur out individual students . . . is not impossible" and we will not disturb that finding. *Cent. Dauphin Sch. Dist. v. Hawkins*,

---

[11] We observe similar reservations regarding the District's contention favoring greater privacy protection here as a result of the disclosure of identifying information by the media. Indeed, although ORO McConnell first averred, "based upon [her] personal knowledge," "the subject of the video recording[] ha[s] been covered on multiple occasions in the news media[,] . . . [which] identify the students in the recording as members of the [school's] basketball team[,] . . . [and therefore] the students' identities w[ould] still be known[,]" she subsequently testified, six distinct times during the hearing, she does not read or watch the news. Affidavit of ORO McConnell, 3/31/2016; *see* N.T., 3/30/2017 at 35-37, 41-42.

No. 2016-CV-4401-MP, at 10 (C.P. Dauphin County filed Aug. 1, 2017) ; *see Central Dauphin II*, 253 A.3d at 835.[12]

Under FERPA regulations, students' "[p]ersonally identifiable information," which we affirmatively view as exempt from disclosure under FERPA, "includes, but is not limited to" the student's and family members' names; student's social security number; other direct or indirect identifiers; and, as the District relies upon here:

> (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, **who does not have personal knowledge of the relevant circumstances**, to identify the student with reasonable certainty; or
>
> (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 C.F.R. §99.3 (emphasis added). We would agree videographic images generally fall within such identifying information under subsection (f), although the provision is less apt here where the District indicates the public has personal knowledge of the relevant circumstances. Subsection (g) is more compelling, and we recognize that certain

---

[12] Justice Mundy complains that we "summarily" reject the District's claim it does not possess the ability to redact the video. Concurring and Dissenting Opinion at 2. Of course, the District bears the burden of proving its education records are exempt from disclosure, and it stands to reason the District must do more than baldly state it lacks the ability to redact them. *Cf. Evans*, 951 F.3d at 587 ("the government is required to explain why the possibility of some similar method of segregability is unavailable if it is to claim the protection of the exemption"). Moreover, the suggestion redaction technology is prohibitively expensive, and the District is "cash-strapped" and financially incapable of using it, Concurring and Dissenting Opinion at 3-4, is completely unsupported in the record. In any event, it is clear Section 706 of the RTKL mandates agencies like the District to redact information exempt from disclosure and does not give them discretion in this regard; they are simply required to comply with the law. *See* 65 P.S. 67.706 ("If the information which is not subject to access is an integral part of the public record . . . and cannot be separated, the agency shall redact from the record the information which is not subject to access . . ."). It is the statute that "creates a presumption" and "obligation" on the part of the District, Concurring and Dissenting Opinion at 3, 6, rather than today's decision.

circumstances might warrant reliance on this provision to preclude the press or others from accessing records regarding well-known incidents or students. However, the circumstances are the key. As we have said, these determinations involve context-specific, case-by-case, fact-sensitive examinations, *see Easton Area II*, 232 A.3d at 728-29, which turn on reasonableness — that is, whether the District "has made a **reasonable** determination that a student's identity is not personally identifiable" when "taking into account **other reasonably available information**." 34 C.F.R. §99.31(b)(1) (emphasis added). Such inquiries are properly raised before the factfinder, rather than decided as a matter of law on appeal.[13] The District first introduced these provisions into its argument to the Commonwealth Court on appeal, and we therefore lack sufficient context to reverse the fourth consecutive directive to disclose the video in reliance upon them here.[14]

In addition, as indicated *supra* at note 1, there is no suggestion in the record that the District complied with its obligation to notify the students and their parents of the record request, its disposition or its appeal. Where the District advances an argument the record depicts an incident so highly-publicized that no amount of redaction can de-identify the video and thus a greater degree of privacy must be afforded, the absence of any third parties, or some certification of notice to them as directed by the OOR, is

---

[13] In this regard, we depart from the *Central Dauphin II* panel's conclusion that redaction of the students' identities "**eliminates**" any potential privacy harm and "**removes** any argument" a record is otherwise exempt under any provisions. *See Central Dauphin II*, 253 A.3d at 833 (emphasis added). Given the fact-sensitive nature of determinations under FERPA and the RTKL, we do not foreclose on different circumstances yielding different results.

[14] To the extent Requester argues the features that might be identified in the video would constitute disclosable "directory information," this claim similarly lacks consideration below; however, we note the concept is not mutually exclusive from personally identifiable information. Both terms are defined to include a student's name and address. *See* 34 C.F.R. §99.3. "Directory information" is information "that would not generally be considered harmful or an invasion of privacy if disclosed[,]" while disclosure of personally identifiable information achieves the opposite result. *Id.*

perplexing. Moreover, we have said it is the responsibility of the agency, here the District, to balance students' informational privacy rights, by implementing required redactions, in the first instance, and addressing those constitutional considerations before the factfinder when challenged; our mechanism for addressing failures in this regard is merely to remand. *See Easton Area II*, 232 A.3d at 732-733, *citing City of Harrisburg v. Prince*, 219 A.3d 602, 618-19 (Pa. 2019); *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143, 1159 (Pa. 2017); *PSEA II*, 148 A.3d at 144. Here, however, we perceive no remaining reasonable expectation of a heightened privacy protection from disclosure of this school bus surveillance video which would warrant that result. Litigation does not progress in a vacuum, and six years later, even the youngest of the Central Dauphin basketball players will turn twenty years old this year. Whatever privacy interest may still exist in a redacted video six years after the incident was highly publicized can only be speculated now. The District's obligation at this juncture is to redact the video to the extent it deems necessary to reasonably remove the students' personally identifiable information.[15]

## Conclusion

For the foregoing reasons, we conclude the Commonwealth Court did not err when it applied the analysis articulated in *Easton Area II* and ordered the mandatory redaction and disclosure of a school bus surveillance video it determined to be an education record subject to FERPA. Accordingly, we affirm the order of the Commonwealth Court, with instructions to the District to reasonably redact the students' personally identifiable information prior to disclosure.

---

[15] Justice Mundy suggests we have somehow "diminish[ed]" the students' privacy interests by declining to remand. Concurring and Dissenting Opinion at 6. But our decision actually ensures protection of those interests. Moreover, redaction and production of the video now, rather than further protracting this litigation, will finally resolve any remaining privacy concerns.

Chief Justice Todd and Justices Donohue and Wecht join the opinion.

Justice Mundy files a concurring and dissenting opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.

Justice Brobson did not participate in the consideration or decision of this matter.